IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANSELL HEALTHCARE PRODUCTS LLC,

    Plaintiff,

v.

RECKITT BENCKISER LLC,

    Defendant.

No. 15-cv-915 (RGA)

## MEMORANDUM OPINION

Colm F. Connolly, Esq., David W. Marston Jr., Esq., Jody C. Barillare, Esq., Morgan, Lewis & Bockius LLP, Wilmington, Del.; Thomas B. Kenworthy, Esq. (argued), Morgan, Lewis & Bockius LLP, Philadelphia, Pa.; Raymond R. Moser, Esq., Moser Taboada, Shrewsbury, N.J., attorneys for Plaintiff.

Adam W. Poff, Esq., Pilar G. Kraman, Esq., Young, Conaway Stargatt & Taylor LLP, Wilmington, Del.; Douglas J. Nash, Esq. (argued), John T. Gutkoski, Esq., Barclay Damon, LLP, Syracuse, N.Y., attorneys for Defendant.

March 16, 2017

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff Ansell Healthcare Products LLC sued Defendant Reckitt Benckiser LLC for infringement of U.S. Patents No. 8,087,412; No. 8,464,719; No. 9,074,027; and No. 9,074,029. These patents relate to making latex condoms and gloves. The parties submitted a joint claim construction brief (D.I. 124) and I held a *Markman* hearing on March 1, 2017.

## I. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

2

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention

3

works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

## II. CONSTRUCTION OF DISPUTED TERMS

The primary dispute in the claim construction brief and at the *Markman* hearing was whether several of the claim terms are indefinite. As I stated in open court, I am declining to rule that any of the claim terms are indefinite at this point. While claim construction is an appropriate time to rule on some sorts of indefiniteness arguments, I do not think it is for the issues Defendant raises. Defendant is free to renew its indefiniteness arguments later in the case.[1]

---

[1] The indefiniteness arguments are, in part, based upon the use of the words "substantially" and "about." On the one hand, I am dubious of Defendant's arguments. Terms of degree are frequently used in claims and the "definiteness requirement... recogniz[es] that absolute precision is unattainable." *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 786 F.3d 983, 1002–03 (Fed. Cir. 2015), *rev'd on other grounds*, 137 S. Ct. 429 (2016) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014)); *see also Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir.

4

Proposed constructions were offered by at least one party on several terms.[2] My construction of those terms are as follows.

### 1. "synthetic polyisoprene particles that are pre-vulcanized"

a. *Plaintiff's proposed construction:* "Synthetic polyisoprene particles that have had some amount of cross-linking prior to the dipping of a former into the latex emulsion"

b. *Defendant's proposed construction:* "Particles subjected to a pre-vulcanization process that, among other things, applies a temperature that is in excess of 22 degrees Celsius."

c. *Court's construction:* "synthetic polyisoprene particles that have had some amount of intraparticle cross-linking prior to the dipping of a former into the latex emulsion"

---

2017) ("Because language is limited, we have rejected the proposition that claims involving terms of degree are inherently indefinite.").

On the other hand, the Federal Circuit, in considering indefiniteness challenges to similar language, has looked for guideposts in the patent informing a skilled artisan of how to measure a term of degree. *See Apple, Inc.*, 786 F.3d at 1002–03 (finding "substantially centered" is not indefinite because a skilled artisan would find guidance in an embodiment); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205–06 (Fed. Cir. 2017) (suggesting "substantially filled" is not indefinite because other claim language teaches a way to determine if the claim term is met); *see also Sonix*, 844 F.3d at 1377 (explaining that the court "ha[s] found terms of degree indefinite...when...guidance [from intrinsic sources] is lacking").

[2] The terms "uniformity of isoprene double bonds" and "osmium tetroxide staining" were argued in the brief and at the hearing on the basis of indefiniteness. Defendant's argument as to the first, "uniformity of isoprene double bonds," strikes me as an enablement argument, not an indefiniteness one. Defendant's argument as to the second, "osmium tetroxide staining," is particularly weak. A claim is not indefinite just because a person has to make a visual judgment. *See Sonix*, 844 F.3d at 1378.

No proposed constructions were offered on these terms. As such, I have left them out of the opinion.

5

The dispute in construction on this term hinges on Defendant's contention that the patents disavow a prior art international patent. "[D]isavowal must be clear and unequivocal [but] need not be explicit." *Poly-American, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016). Disavowal can occur where a patent "distinguishes or disparages prior art based on the absence of that feature." *Id.* Defendant argues that is what happened here.

Specifically, Defendant argues the patents disclaim GB patent No. 2,436,566 when the specification states:

> UK patent application GB 2,436,566 to Attrill et al. discloses minimizing pre-vulcanization of polyisoprene latex. This process for making a polyisoprene latex comprises compounding a synthetic polyisoprene latex with compounding ingredients and maturing the latex at a low temperature so as to minimize pre-vulcanization. Dipping of condoms is also conducted at low temperatures typically 15° C. to less than 20° C. The absence of pre-vulcanization is verified be [sic] assuring the strength of a ring made has a prevulcanisate relaxed modulus has [sic] a value less than 0.1 MPa indicative of the absence of pre-vulcanization. The latex emulsion may contain accelerator such as dithiocarbamate. The '566 patent application teaches away from pre-vulcanization prior to dipping of latex articles.

'412 Patent, Col. 4, ll. 11–24. This language explains that the GB Patent seeks to "minimiz[e]" pre-vulcanization. It is part of the "Background of the Invention" discussion. Defendant seeks to stretch this language way too far. I do not read it as disavowing, let alone, clearly disavowing, use of any temperatures referenced in the GB Patent. My rejection of Defendant's construction is consistent with the fact that some of the claims themselves claim use of a temperature below 22 degrees Celsius. *See* '412 Patent, col. 20, ll. 8–10.

6

2. **"substantially"**

    a. *Plaintiff's proposed construction:* "to a large extent, but not necessarily completely"

    b. *Defendant's proposed construction:* none

    c. *Court's construction:* "to a large extent, but not necessarily completely"

Plaintiff asked me to construe "substantially" as used in "the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniform" and "wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniformly distributed among and between the synthetic polyisoprene particles." Defendant responded only with an indefiniteness argument. As only Plaintiff has proposed a construction (*see* D.I. 124 at 38, 50), and it conforms with the plain meaning of "substantially," I adopt it.

3. **"substantially conchoidal fracture"**

    a. *Plaintiff's proposed construction:* "A fracture that appears to a large extent, but not necessarily completely, shell-like"

    b. *Defendant's proposed construction:* N/A

    c. *Court's construction:* "fracture that appears to a large extent, but not necessarily completely, shell-like"

Only Plaintiff submitted a proposed construction (*see id.* at 51), and for the same reason as above, I adopt Plaintiff's construction.

7

4. **"absence of intra-polyisoprene particle and inter-polyisoprene particle features"; "absence of scanning electron microscope-viewable intra-polyisoprene particle and inter-polyisoprene particle features"**

   a. *Plaintiff's proposed construction:* "No particle features are visible in a SEM micrograph of sufficient magnification to allow such particles to be seen"

   b. *Defendant's proposed construction:* "No particle features are visible in a SEM micrograph of sufficient magnification to allow such particles to be seen because the entire fracture surface propagated with no preference for either the intra particle or the inter particle regions"

   c. *Court's construction:* "no particle features are visible in a SEM micrograph of sufficient magnification to allow such particles to be seen"

Both parties agree on the first part of the construction, but Defendant seeks to add additional language from the specification. The specification reads:

> [t]he fracture surface as shown in this figure shows a fracture surface that was very nearly planar with no features indicating intra particle or inter particle regions. This absence of intra-polyisoprene particle and inter-polyisoprene particle features means that *the fracture surface propagated with no preference for either the intra particle region or the inter particle regions* ....

'412 Patent, Col. 7, ll. 45–51) (emphasis added).

At the hearing, Defendant suggested the patentee was acting as his own lexicographer. I do not read the specification as defining "absence of intra-polyisoprene particle and inter-polyisoprene particle features" as a term but rather explaining the implication of its occurrence. Nor do I see any other reason to adopt this additional limitation into the claim's construction. It is not required by the

8

patent and would not be useful to the jury. Thus I am adopting the construction agreed to by the parties and rejecting Defendant's proposed addition.

### 5. "passes through both inter-particle regions and intra-particle regions nonpreferentially"

a. *Plaintiff's proposed construction:* plain meaning

b. *Defendant's proposed construction:* "No part of the fracture surface forms around individual polyisoprene particles because the entire fracture surface propagates with no preference for either the intra particle region or the inter particle regions."

c. *Court's construction:* plain meaning

As with the last term, Defendant seeks to import part of the specification into the construction of this claim term. Here, the specification reads, "propagate[s] with no preference for either the intra particle region or the inter particle regions indicating that both inter and intra particle regions were approximately equal strength or were crosslinked nearly equally." '412 Patent, col. 7, lines 49–53. Plaintiff is open to including this fuller statement from the specification. But, I do not think the added language will aid the jury. I think the jury will understand "nonpreferentially," which is used in its ordinary sense.

9

6. **"about"**

    a. *Plaintiff's proposed construction:* "approximately" or plain meaning

    b. *Defendant's proposed construction:* None

    c. *Court's construction:* no construction

In the brief, Plaintiff asked the Court to construe "about" as used in "wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are such that the molecular weight is less than about [x] g/mol between the crosslinks." Defendant offered no proposed construction. Plaintiff offered the construction "approximately." At the hearing, Plaintiff stated that it was unsure if "approximately" would aid the jury's understanding any more than "about" would. I do not think it would and thus I am declining to construe the term "about."

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion.

10