

WILMINGTON
RODNEY SQUARE

NEW YORK
ROCKEFELLER CENTER

Pilar G. Kraman
P 302.576.3586
F 302.576.3742
PKraman@ycst.com

**BY CM/ECF & HAND DELIVERY**  April 4, 2017

The Honorable Richard G. Andrews
United States District Court
For the District of Delaware
844 North King Street
Wilmington, DE 19801

Re: *Ansell Healthcare Products LLC v. Reckitt Benckiser LLC*, C.A. No. 15-915-RGA

Dear Judge Andrews:

Defendant Reckitt Benckiser LLC ("RB") submits this letter in advance of the April 6, 2017 discovery conference to ask that the Court order plaintiff Ansell Healthcare Products LLC ("Ansell") to respond to RB's interrogatories Nos. 23 and 24, and to permit RB to withdraw its admission in response to Ansell's request for admission ("RFA") No. 4.

**Ansell's Objections and Responses to RB Interrogatories Nos. 23 and 24**

In its infringement contentions, Ansell included a TEM image of an osmium tetroxide stained sample of the accused product in support of its assertion that the product has "substantially uniform" and/or "substantially uniformly distributed" inter-particle and intra-particle crosslinks. (*See* Ex. A.) In its invalidity contentions, RB used a similar approach, and included two TEM images of osmium tetroxide stained samples of the prior art. RB's contention is that these TEMs evidence at least as much uniformity as is shown in Figure 1 in the Ansell patents, as well as that shown in the TEM of the accused product in Ansell's infringement contentions. (*See* Ex. A.)

Interrogatories Nos. 23 and 24 ask Ansell, if it contends that the two TEMs in RB's invalidity contentions do **not** evidence "substantially uniform" and/or "substantially uniformly distributed" inter-particle and intra-particle crosslinks, to explain why. (*See* Ex. B.) Ansell refused to provide a substantive answer, objecting that it first needs samples of the material depicted in the TEMs and that the interrogatories are premature because they seek an expert opinion. Neither objection has merit.

It is unclear why Ansell would need samples of the depicted material to be able to respond. The interrogatories simply ask whether Ansell contends the images show substantially uniform crosslinks, and, if not, why not. Not only are the TEM images similar to those in Ansell's infringement contentions, but they are similar to the TEM in Figure 1 in the Ansell patents. Simply looking at the uniformity of the staining in Figure 1 is, according to the Ansell patents, how a person of ordinary skill in the art can determine the degree of the uniformity of the crosslinking. If just looking at the TEM in Figure 1 was sufficient for the Ansell inventors to make a determination in the patents, and if just looking at the TEM in Ansell's contentions was

Young Conaway Stargatt & Taylor, LLP
The Honorable Richard G. Andrews
April 4, 2017
Page 2

sufficient for Ansell to make a determination as to infringement, it is unclear why it would not sufficient for Ansell in this context. (*See* Ex. A.)

Moreover, the interrogatories are not premature and no more seek an expert opinion than do infringement and invalidity contentions, which are explicitly required by this Court during fact discovery. Indeed, the interrogatories do little more than seek Ansell's validity contentions, which is a common practice in this Court. Further, as the Court is aware from the *Markman* hearing, what does and does not constitute "substantially uniform" and/or "substantially uniformly distributed" inter-particle and intra-particle crosslinks is a critical issue in this case. So that it can prepare its case, RB is entitled to know Ansell's factual contentions about whether or not these TEM images evidence such uniformity and, if not, why not. Ansell should not be allowed to withhold this type of information, a factual contention on a narrow validity issue, until its reply expert report.

Therefore, RB requests the Court compel Ansell to respond to RB's interrogatories Nos. 23 and 24.

**RB's Response to Ansell RFA No. 4**

Requests for admission under Federal Rule 36 are used "to establish admission of facts about which there is no real dispute." 7-36 *Moore's Federal Practice* – Civil § 36.02. The Court may permit a party to withdraw or amend an admission "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). To determine whether the presentation of the merits will be improved by permitting an admission to be withdrawn, "courts generally seek to ascertain whether the admission is contrary to the evidence of record." *Altman v. Ingersoll-Rand Co.*, No. 05-956, 2008 WL 596066, at *3 (E.D. Pa. Mar. 4, 2008) (permitting plaintiff to withdraw admission later contradicted by plaintiff's expert). Withdrawal is warranted here.

Ansell's RFA No. 4 asks whether "Durex RealFeel® condoms comprise synthetic polyisoprene particles that are bonded to each other through **intra**-polyisoprene particle crosslinks **and inter**-polyisoprene particle crosslinks. (*See* Ex. C) (emphasis added.) Very early in this case, RB admitted the request. (*Id*.) That response was provided before any significant discovery had taken place, months before Ansell disclosed its infringement theories, and more than a year before the Court issued its *Markman* decision. And, as it turns out, the response was factually incorrect.

Recently, in working with its expert, Dr. William Potter, to prepare for expert discovery commencing at the end of May, RB learned that the factual assertion in Ansell's RFA No. 4 – *i.e.*, that the particles are bonded to each other through **both** intra-polyisoprene particle crosslinks **and** inter-polyisoprene particle crosslinks – is scientifically impossible. As Dr. Potter explains in his accompanying declaration, **intra**-polyisoprene particle crosslinks are crosslinks that are located exclusively inside the individual polyisoprene particles, whereas **inter**-

Young Conaway Stargatt & Taylor, LLP
The Honorable Richard G. Andrews
April 4, 2017
Page 3

polyisoprene particle crosslinks are, according to the Ansell patents, located between the particles. (Ex. D, Potter Decl. at ¶¶ 5, 8.) Thus, by definition, **intra**-polyisoprene particle crosslinks do **not** cross the boundaries between the particles such that it is **not** scientifically possible for **intra**-polyisoprene particle crosslinks to bond one particle to another. (*Id.*, at ¶¶ 7-9.) What bonds the separate particles together, at least according to the Ansell patents, are **inter**-polyisoprene particle crosslinks, *i.e.*, crosslinks between the particles. (*Id.*, at ¶ 8) Thus, it is **not** scientifically possible for particles to be bonded to each other through **both** intra-polyisoprene particle crosslinks **and** inter-polyisoprene particle crosslinks, which is what Ansell's RFA No. 4 states. (*Id.*, at ¶ 9)

This means that RB's response is factually incorrect, and certainly is not a matter of undisputed fact. It also means that, unless it is withdrawn, it will interfere with RB's ability to fairly present the merits of its case based on the science, and it will be contradicted by RB's expert. These are all grounds to allow the admission to be withdrawn. *See Jones v. Tauber & Balser, P.C.*, 503 B.R. 162, 175 (ND. Ga. 2013) (allowing withdrawal of admission where "the withdrawal align[ed] the record to reality and thus provid[ed] a more accurate basis upon which the Court can reach the merits of Plaintiff's case."); *Haynes v. Navy Fed. Credit Union*, 296 F.R.D. 9, 14 (D.D.C. 2013) (granting motion to amend inaccurate admission because such inaccuracy would interfere with Defendant's ability to defend the case); *Altman*, 2008 WL 596066, at *3 (E.D. Pa. Mar. 4, 2008) (permitting plaintiff to withdraw admission later contradicted by plaintiff's expert); *Dunn v. Hercules, Inc.*, No. 93-4175, 1994 WL 194542, at *1 (E.D. Pa. May 12, 1994) (permitting plaintiff to withdraw admission after plaintiff's expert submitted report contradicting the admission).

Moreover, Ansell will not be prejudiced by the withdrawal. The prejudice contemplated by Rule 36(b) "is not simply that the party who obtained the admission now has to convince the jury of its truth. Something more is required." *Gwynn v. City of Phila.*, 719 F.3d 295, 299 (3d Cir. 2013) (quotations omitted). When undertaking a prejudice inquiry under Rule 36(b), district courts should focus on the prejudice that the nonmoving party would suffer at trial, such as the difficulty a party may face in proving its case, for example by the unavailability of key witnesses. *See Conlon v. United States*, 474 F.3d 616, 623-24 (9th Cir. 2007); *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001). Here, there are no missing witnesses or evidence, and trial is almost a year away. This is an expert issue, and expert discovery has not even started. Ansell can address this issue with its expert in his or her report, and Ansell also can fully explore the issue with Dr. Potter during his deposition. Moreover, the parties are still taking fact depositions and if, for some reason, Ansell wishes to explore this issue with RB's fact witness it can do so. Thus, there would be no prejudice because a withdrawal of the admission would not hinder Ansell's ability to prove its case at trial.

For the foregoing reasons, RB respectfully requests that the Court permit RB to withdraw its admission to Ansell's RFA No. 4.

Young Conaway Stargatt & Taylor, LLP
The Honorable Richard G. Andrews
April 4, 2017
Page 4

                                                 Respectfully submitted,

                                                 */s/ Pilar G. Kraman*

                                               Pilar G. Kraman (No. 5199)

cc:    Counsel of Record (by CM/ECF and email)
        Clerk of the Court (by hand delivery)