# Exhibit A

**Exhibit A – TEM's**



| | |
|---|---|
| Figure 1 TEM in Ansell Patents | |
| TEM in Ansell's Infringement Contentions | A TEM micrograph of an osmium treated sample of the Accused Condom shows the substantial uniformity of the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks:<br><br>Uniformity is seen at the particle boundaries (e.g., A), and at the particle interiors (e.g., B). Polystyrene inclusions PS are created by the analytical technique. |

1



| TEM #1 in RB's Invalidity Contentions (Rog. 23) | Staining of **inter** and **intra** particle regions shows at least as much uniformity as does the TEM micrograph of the accused product that appears in Ansell's Fourth Amended Initial Claim Chart and/or the TEM micrograph that appears as Figure 1 in the asserted patents. |
| TEM #2 in RB's Invalidity Contentions (Rog. 24) | Staining of **inter** and **intra** particle regions shows at least as much uniformity as does the TEM micrograph of the accused product that appears in Ansell's Fourth Amended Initial Claim Chart and/or the TEM micrograph that appears as Figure 1 in the asserted patents. |

# **Exhibit B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **ANSELL HEALTHCARE PRODUCTS LLC,** | |
| Plaintiff, | |
| v. | **Civil Action No.:** |
| **RECKITT BENCKISER LLC,** | **1:15-cv-00915-RGA** |
| Defendant. | |

**ANSELL HEALTHCARE PRODUCTS LLC'S RESPONSES TO
DEFENDANT'S SECOND SET OF INTERROGATORIES (NOS. 23-24)**

Pursuant to Rule 33(b) of the Federal Rules of Civil Procedure, plaintiff Ansell

Healthcare Products LLC ("Ansell") hereby responds to the interrogatories of defendant Reckitt

Benckiser LLC ("RB") as follows:

**INTERROGATORY NO. 23:**

If you contend that the image on p. 2 of Appendix C to RB's Second Amended Initial
Invalidity Contentions does not evidence "substantially uniform" and/or "substantially uniformly
distributed" inter-particle and intra-particle crosslinks as those terms are used in the claims
asserted against RB in this case, explain why.

**RESPONSE TO INTERROGATORY NO. 23:**

Ansell objects to this interrogatory. What Ansell contends is that RB has not shown by

clear and convincing evidence that the image on page 2 of Appendix C to RB's Second

Amended Initial Invalidity Contentions establishes that the material in question comprises

"substantially uniform" and/or "substantially uniformly distributed" inter-particle and intra-

particle crosslinks as those terms are used in the claims asserted against RB, or why RB claims it

does.  Moreover, because RB has refused to provide Ansell discovery regarding the materials in question and the testing that underlies this image, Ansell is unable to respond to this interrogatory.  Finally, Ansell objects to this interrogatory as premature, as seeking expert opinion on an issue as to which Ansell does not have the burden of proof and as to which expert disclosures from Ansell are not due until June 26, 2017 pursuant to paragraph 12 of the Court's Scheduling Order, agreed to by RB.

**INTERROGATORY NO. 24:**

If you contend that the image on p. 5 of Appendix C to RB's Second Amended Initial Invalidity Contentions does not evidence "substantially uniform" and/or "substantially uniformly distributed" inter-particle and intra-particle crosslinks as those terms are used in the claims asserted against RB in this case, explain why.

**RESPONSE TO INTERROGATORY NO. 24:**

Ansell objects to this interrogatory.  What Ansell contends is that RB has not shown by clear and convincing evidence that the image on page 5 of Appendix C to RB's Second Amended Initial Invalidity Contentions establishes that the material in question comprises "substantially uniform" and/or "substantially uniformly distributed" inter-particle and intra-particle crosslinks as those terms are used in the claims asserted against RB, or why RB claims it does.  Moreover, because RB has refused to provide Ansell discovery regarding the materials in question and the testing that underlies this image, Ansell is unable to respond to this interrogatory.  Finally, Ansell objects to this interrogatory as premature, as seeking expert opinion on an issue as to which Ansell does not have the burden of proof and as to which expert disclosures from Ansell are not due until June 26, 2017 pursuant to paragraph 12 of the Court's Scheduling Order, agreed to by RB.

- 2 -

DATED:  February 22, 2017

Colm F. Connolly (I.D. No. 3151)
David W. Marston Jr. (I.D. No. 3972)
Jody C. Barillare (I.D. No. 5107)
MORGAN, LEWIS & BOCKIUS LLP
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, Delaware  19801
302.574.3000
colm.connolly@morganlewis.com
david.marston@morganlewis.com
jody.barillare@morganlewis.com

*and*

Thomas B. Kenworthy (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
215.963.5000
thomas.kenworthy@morganlewis.com

*and*

Raymond R. Moser, Jr. (Admitted *Pro Hac Vice*)
MOSER TABOADA
1030 Broad Street, Suite 203
Shrewsbury, New Jersey  07702
732.935.7100
rmoser@mtiplaw.com

*Attorneys for Plaintiff*
*Ansell Healthcare Products LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2017, copies of the foregoing Ansell

Healthcare Products LLC's Responses To Defendant's Second Set Of Interrogatories (Nos. 23-

24) are being served via electronic mail upon:

> Adam W. Poff, Esquire
> Pilar G. Kraman, Esquire
> YOUNG CONAWAY STARGATT
>    & TAYLOR, LLP
> Rodney Square
> 1000 North King Street
> Wilmington, Delaware  19801

> *and*

> Douglas J. Nash, Esquire
> John D. Cook, Esquire
> BARCLAY DAMON LLP
> Barclay Damon Tower
> 125 East Jefferson Street
> Syracuse, New York  13202

> *Attorneys for Defendant*
> *Reckitt Benckiser LLC*

THOMAS B. KENWORTHY

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 1:15-cv-00915-RGA |
| v. | ) ) | |
| RECKITT BENCKISER LLC, | ) ) | |
| Defendant. | ) | |

**DEFENDANT RECKITT BENCKISER LLC'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1-12)**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant Reckitt Benckiser LLC ("RB"), as and for its response to Plaintiff Ansell Healthcare Products LLC's ("Plaintiff") First Set of Requests for Admission (Nos. 1-12), states as follows:

**GENERAL OBJECTIONS**

1.      The following General Objections are hereby incorporated by reference into the responses made with respect to each separate request.  Neither the inclusion of any specific objection or response to a request, nor the failure to include any general or specific objection in response to a request, shall in any way be deemed as a waiver of any General Objection made herein or that may be asserted at another time.

2.      RB objects to each request to the extent that it calls for any documents or information protected by any applicable privilege or doctrine, including, without limitation, the attorney-client privilege, the work-product doctrine, and/or documents or information pertaining to RB's counsel's mental impressions.  RB further objects to each request to the extent that it calls for trial preparation or other information prepared in anticipation of, as a result of, or

relating to litigation, or that is otherwise immune from discovery by the common interest privilege or other privilege.

3.      RB objects to each request to the extent that it employs imprecise specifications of the information sought.  In particular, terms such as "concerning," "referring to," "relating to," and other like terms do not provide an adequate classification of the information sought.  Where such terms are used, RB will, therefore, provide only such information that reasonably can be identified as responsive to the requests.

4.      RB objects to each request to the extent that it is vague, ambiguous and fails to describe the information sought with reasonable particularity.

5.      RB objects to each request to the extent that it is vague, ambiguous, overly broad, and unduly burdensome because it fails to specify a relevant time period.  RB further objects to each and every request that seeks documents and things outside the relevant time frame for this action.

6.      RB objects to each request to the extent that it calls for disclosure of information that is not reasonably related to the subject matter of this action, is not relevant to the claims or defenses asserted in this action, is not reasonably calculated to lead to the discovery of admissible evidence, and/or to the extent it purports to impose upon RB any obligations beyond those imposed or permitted by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware (the "Local Rules").

7.      RB objects to each request to the extent it seeks publicly-available information or information that is equally accessible to Plaintiff.

8.      The specific responses contained herein are made in a good-faith effort to respond to Plaintiff's requests based upon such information and documents which are presently available

- 2 -

and specifically known to RB, but should in no way be considered to prejudice RB in relation to amending or supplementing such responses upon further discovery of facts, documents, research, or analysis.  RB has neither concluded its investigation of the facts, witnesses, or documents related to this case nor completed its analysis of available data, and therefore expressly reserves the right to present additional facts, contentions, and/or documents which may come to its attention as this litigation proceeds.

## SPECIFIC RESPONSES

Subject to and without waiving the specific objections set forth below, and specifically incorporating each of the foregoing General Objections into each Response below, RB responds as follows:

**Request for Admission No. 1:**

**The Durex RealFeel® condoms that are imported into and sold in Australia are manufactured at the same location in Thailand, using the same equipment, materials, procedures and processing conditions as the Durex RealFeel® condoms that Reckitt Benckiser LLC imports into and sells in the United States.**

Subject to and without waiving the General Objections above, and reserving its right to supplement this response, RB responds as follows:

Admitted.

**Request for Admission No. 2:**

**Durex RealFeel® condoms are synthetic polyisoprene elastomeric articles.**

Subject to and without waiving the General Objections above, and reserving its right to supplement this response, RB responds as follows:

Admitted.

11757307

**Request for Admission No. 3:**

**Durex RealFeel® condoms comprise synthetic polyisoprene particles that are cured.**

Subject to and without waiving the General Objections above, and reserving its right to supplement this response, RB responds as follows:

Admitted.

**Request for Admission No. 4:**

**Durex RealFeel® condoms comprise synthetic polyisoprene particles that are bonded to each other through intra-polyisoprene particle cross-links and inter-polyisoprene particle cross-links.**

Subject to and without waiving the General Objections above, and reserving its right to supplement this response, RB responds as follows:

Admitted.

**Request for Admission No. 5:**

**The intra-polyisoprene particle cross-links and the inter-polyisoprene particle cross-links in Durex RealFeel® condoms are substantially uniform.**

RB objects to this request on the grounds that it is vague and ambiguous.  In particular, RB objects to this request because the term "substantially uniform," as used in the Patents-in-Suit, requires claim construction by the Court.  This request therefore contains an undefined term that leaves open to interpretation the meaning of the statement for which an admission is requested, and improperly requests a legal conclusion.  *See, e.g., Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (stating that "requests [for admission] directed towards applying the claims of the patent or requiring application of the claims prior to

any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper").

Subject to and without waiving these Specific Objections and the General Objections above, and reserving its right to supplement this response, RB states that it is unable to admit or deny this request because it is vague, ambiguous, and requires a legal conclusion, and therefore denies this request.

**Request for Admission No. 6:**

**Sulfur has penetrated, and is present within, the synthetic polyisoprene particles of Durex RealFeel® condoms.**

RB objects to this request on the grounds that it is vague and ambiguous. In particular, RB objects to this request because the phrase "sulfur has penetrated" is undefined, and therefore vague and ambiguous. In addition, RB objects to this request because the term "presence of sulfur within," as used in the Patents-in-Suit, requires claim construction by the Court. This request therefore contains an undefined term that leaves open to interpretation the meaning of the statement for which an admission is requested, and improperly requests a legal conclusion. *See, e.g., Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (stating that "requests [for admission] directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper").

Subject to and without waiving these Specific Objections and the General Objections above, and reserving its right to supplement this response, RB states that it is unable to admit or

deny this request because it is vague, ambiguous, and requires a legal conclusion, and therefore denies this request.

**Request for Admission No. 7:**

**Sulfur is distributed in a substantially uniform manner within the synthetic polyisoprene particles of Durex RealFeel® condoms.**

RB objects to this request on the grounds that it is vague and ambiguous.  In particular, RB objects to this request because the terms "substantially uniform" and "within the synthetic polyisoprene particles," as used in the Patents-in-Suit, require claim construction by the Court. This request therefore contains an undefined term that leaves open to interpretation the meaning of the statement for which an admission is requested, and improperly requests a legal conclusion. *See, e.g., Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (stating that "requests [for admission] directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper").

Subject to and without waiving these Specific Objections and the General Objections above, and reserving its right to supplement this response, RB states that it is unable to admit or deny this request because it is vague, ambiguous, and requires a legal conclusion, and therefore denies this request.

**Request for Admission No. 8:**

**Sulfur has formed intra-particle cross-links within the synthetic polyisoprene particles of Durex RealFeel® condoms.**

RB objects to this request on the grounds that it is vague and ambiguous.  In particular, RB objects to this request because the phrase "sulfur has formed" is undefined, and therefore vague and ambiguous.  In addition, RB objects to this request because the term "within the synthetic polyisoprene particles," as used in the Patents-in-Suit, requires claim construction by the Court.  This request therefore contains an undefined term that leaves open to interpretation the meaning of the statement for which an admission is requested, and improperly requests a legal conclusion.  *See, e.g., Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (stating that "requests [for admission] directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper").

Subject to and without waiving these Specific Objections and the General Objections above, and reserving its right to supplement this response, RB states that it is unable to admit or deny this request because it is vague, ambiguous, and requires a legal conclusion, and therefore denies this request.

**Request for Admission No. 9:**

**In Durex RealFeel® condoms, zinc dithiocarbamate is present outside the synthetic polyisoprene particles and decorates their exterior.**

RB objects to this request on the grounds that it is vague and ambiguous.  In particular, RB objects to this request because the phrases "present outside the synthetic polyisoprene particles" and "decorates their exterior" are undefined, and therefore vague and ambiguous.  In

- 7 -

addition, RB objects to this request because the term "decorated by zinc," as used in the Patents-in-Suit, requires claim construction by the Court.  This request therefore contains an undefined term that leaves open to interpretation the meaning of the statement for which an admission is requested, and improperly requests a legal conclusion.  *See, e.g., Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (stating that "requests [for admission] directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper").

Subject to and without waiving these Specific Objections and the General Objections above, and reserving its right to supplement this response, RB states that it is unable to admit or deny this request because it is vague, ambiguous, and requires a legal conclusion, and therefore denies this request.

**Request for Admission No. 10:**

**In the manufacture of Durex RealFeel® condoms, zinc dithiocarbamate is a catalyst that breaks down sulfur atoms into short chain atoms that are able to penetrate into the synthetic polyisoprene particles.**

RB objects to this request on the grounds that it is vague and ambiguous.  In particular, RB objects to this request because the phrases "catalyst," "breaks down," "short chain atoms," and "able to penetrate" are undefined, and therefore vague and ambiguous.  In addition, RB objects to this request because the term "within the synthetic polyisoprene particles," as used in the Patents-in-Suit, requires claim construction by the Court.  This request therefore contains an undefined term that leaves open to interpretation the meaning of the statement for which an admission is requested, and improperly requests a legal conclusion.  *See, e.g., Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (stating that "requests [for

- 8 -

admission] directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper").

Subject to and without waiving these Specific Objections and the General Objections above, and reserving its right to supplement this response, RB states that it is unable to admit or deny this request because it is vague, ambiguous, and requires a legal conclusion, and therefore denies this request.


**Request for Admission No. 11:**

**In the manufacture of Durex RealFeel® condoms, at the time of dipping, the polyisoprene latex has a pre-vulcanisate relaxed modulus value that exceeds the range of "less than 0.1 MPa."**

RB objects to this request on the grounds that it is vague and ambiguous.  In particular, RB objects to this request because the it does not explain the specific test methodology that should be used to determine the pre-vulcanisate relaxed modulus value, and therefore is vague and ambiguous.  In addition, RB objects to this request because the quoted phrase "less than 0.1 MPa" in the request appears to refer to what is a mischaracterization of UK patent application GB 2,436,566 (the "GB Application") set forth and explicitly incorporated by reference in the Patents-in-Suit.  What the GB Application actually says is that the PRM "**may be**" (but does not have to be) "0.1 MPa or less," and that it is merely "**preferred**" (but certainly not required) that the PRM value be "**about** 0.1 MPa or less."  This request is therefore is based on a false premise and contains undefined terms that leave open to interpretation the meaning of the statement for which an admission is requested.

Subject to and without waiving these Specific Objections and the General Objections above, and reserving its right to supplement this response, RB states that, based on the specific

- 9 -

test methodology used by RB in connection with manufacture of Durex RealFeel® condoms, at the time of dipping, the polyisoprene latex can and often does have a PRM value of about 0.1 MPa or less, and therefore denies this request.

**Request for Admission No. 12:**

**Durex RealFeel® condoms exhibit a substantially conchoidal fracture when fractured at liquid nitrogen temperature.**

RB objects to this request on the grounds that it is vague and ambiguous.  In particular, RB objects to this request because the term " substantially conchoidal fracture," as used in the Patents-in-Suit, requires claim construction by the Court.  This request therefore contains an undefined term that leaves open to interpretation the meaning of the statement for which an admission is requested, and improperly requests a legal conclusion.  *See, e.g., Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (stating that "requests [for admission] directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper").

Subject to and without waiving these Specific Objections and the General Objections above, and reserving its right to supplement this response, RB states that it is unable to admit or deny this request because it is vague, ambiguous, and requires a legal conclusion, and therefore denies this request.

- 10 -

Dated: February 25, 2016

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 576-3586
pkraman@ycst.com

-and-

Douglas J. Nash (admitted *pro hac vice*)
John T. Gutkoski (admitted *pro hac vice*)
Denis J. Sullivan (admitted *pro hac vice*)
Kathryn D. Cornish (admitted *pro hac vice*)
Naresh K. Kannan (admitted *pro hac vice*)
BARCLAY DAMON, LLP
One Park Place
300 South State Street
Syracuse, New York 13202
(315) 425-2700

*Attorneys for Defendant*
*Reckitt Benckiser LLC*

- 11 -

11757307

## <u>CERTIFICATE OF SERVICE</u>

I, Pilar G. Kraman, hereby certify that on February 25, 2016, I caused a true and correct

copy of the foregoing document to be served on the following counsel of record in the manner

indicated:

### <u>BY E-MAIL</u>

Colm F. Connolly, Esquire
David W. Marston Jr., Esquire
Jody C. Barillare, Esquire
Morgan, Lewis & Bockius LLP
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, DE 19801
*cconnolly@morganlewis.com*
*dmarston@morganlewis.com*
*jbarillare@morganlewis.com*

Thomas B. Kenworthy, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
*tkenworthy@morganlewis.com*

*Attorneys for Plaintiff*

Dated:   February 25, 2016                    YOUNG CONAWAY STARGATT &
                                              TAYLOR, LLP

                                              */s/  Pilar G. Kraman*
                                              Pilar G. Kraman (No. 5199)
                                              Rodney Square
                                              1000 N. King Street
                                              Wilmington, Delaware 19801
                                              *pkraman@ycst.com*

                                              *Attorneys for Defendant*

# **<u>Exhibit D</u>**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 1:15-cv-00915-RGA |
| v. | ) ) | |
| RECKITT BENCKISER LLC, | ) ) | |
| Defendant. | ) | |

### DECLARATION OF WILLIAM D. POTTER, Ph.D.

**WILLIAM D. POTTER** hereby declares as follows:

1.      I am over 18 years of age and have personal knowledge of the facts set forth herein.  If called to testify in this action the following would constitute a portion of my direct testimony.

2.      I am a polymer chemist and consult to companies in the healthcare and pharmaceutical industry, including manufacturers of natural rubber and synthetic latex products, such as medical gloves and barrier contraceptives, particularly in relation to matters concerned with new product development and new polymer materials.

3.      A complete recitation of my background and experience is set forth in my earlier declaration dated December 30, 2016.  [D.I. 125, App'x V].

4.      I understand the patents at issue in this case are U.S. Patent Nos. 8,087,412 (the "'412 Patent"), 8,464,719 (the "'719 Patent"), 9,074,027 (the "'027 Patent"), 9,074,029 (the "'029 Patent") (collectively the "Patents-in-Suit").  All four of the Patents-in-Suit are entitled "Dip-Formed Synthetic Polyisoprene Latex Articles With Improved **Intraparticle** and

**Interparticle** Crosslinks" (emphasis added).

5.     As I explained in my earlier declaration, when rubber and sulphur are combined and heated, the sulphur combines with the polyisoprene chains in the rubber particles to form relatively stable sulphur links between the carbon atoms in the polyisoprene chains, called sulphur crosslinks.  It is well understood, and was before the Patents-in-Suit were filed, that pre-vulcanization causes crosslinks to form **inside** the individual rubber or polyisoprene particles. These are called **intra-particle crosslinks**, and any amount of pre-vulcanization will cause at least some of them to form.  In contrast, post-vulcanization causes bonds to form **between the individual particles** in addition to causing additional crosslinks to form inside the particles. This process was also well known before the Patents-in-Suit were filed, although the exact nature of the bonds between the particles is still not fully understood today, and is a matter of some debate within the art.  The Patents-in-Suit theorize that those bonds are what the inventors refer to as **inter-particle crosslinks**, or sulphur crosslinks that form between adjacent polyisoprene particles.

6.     I understand that many of the claims in the Patents-in-Suit require "synthetic polyisoprene particles bonded to each other through **intra**-polyisoprene particle crosslinks **and** **inter**-polyisoprene particle crosslinks" (emphasis added).

7.     In anticipation of submitting an expert report in this case that addresses the plaintiff's allegations of infringement, I explained to counsel for the defendant, Reckitt Benckiser LLC ("RB"), that it is **not** scientifically possible for particles to be bonded to each other through **both** intra-polyisoprene particle crosslinks **and** inter-polyisoprene particle crosslinks, as set forth in the claims.

8.     As I noted above, **intra**-polyisoprene particle crosslinks are exclusively located

- 2 -

within the individual polyisoprene particles and, by definition, do **not** cross the boundaries between the particles.  As a result, it is **not** possible for **intra**-polyisoprene particle crosslinks to bond one particle to another.  What bonds the separate particles together, at least according to the inventors of the Patents-in-Suit, are **inter**-polyisoprene particle crosslinks, *i.e.*, crosslinks between the particles.

9.     I have reviewed RB's response to plaintiff's Request for Admission No. 4.  It is my view that RB's response is incorrect.  For the reasons set forth above, it is not scientifically possible for Durex RealFeel condoms to comprise synthetic polyisoprene particles bonded to each other through intra-polyisoprene particle crosslinks.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on April 3, 2017

William D. Potter