# *Appendix I*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**ANSELL HEALTHCARE
PRODUCTS LLC,**

            **Plaintiff,**

    **v.**

**RECKITT BENCKISER LLC,**

            **Defendant.**

**Civil Action No.:**

**1:15-cv-00915-RGA**

## DECLARATION OF THOMAS B. KENWORTHY

I, Thomas B. Kenworthy, state under penalty of perjury that to the best of my knowledge, information, and belief, the following facts are true and correct:

1.      I am a Senior Counsel at the law firm of Morgan, Lewis & Bockius LLP and the lead counsel for plaintiff Ansell Healthcare Products LLC ("Ansell"), on whose behalf I have been admitted to appear *pro hac vice* in this case.

2.      In an Addendum to RB's First Amended Initial Invalidity Contentions served September 29, 2016, RB relied upon (1) a TEM micrograph of a product recreated by RB purportedly pursuant to the teachings of U. S. Patent Publication No. 2004/0169319 ("Wang")[1]; and (2) a TEM micrograph of a product recreated by RB purportedly pursuant to U.K. Patent Application No. G.B. 2,436,566A ("Attrill").[2] *See* Ex. 1 hereto.

---

[1]    The TEM micrograph reproduced at page 2 of the Addendum to RB's First Amended Initial Invalidity Contentions is the same as the annotated image on p. 2 of Appendix C to RB's Second Amended Initial Invalidity Contentions.

[2]    The TEM micrograph reproduced at page 5 of the Addendum to RB's First Amended Initial Invalidity Contentions is the same as the annotated image on p. 5 of Appendix C of RB's Second Amended Initial Invalidity Contentions.

3.      Ansell served requests for samples of the materials that were the subjects of these TEM micrographs.  *See* Ex. 2 hereto.  RB has failed to produce any such samples to Ansell.

4.      Following service of RB's Initial Invalidity Contentions, Ansell had served requests for production seeking the following documents on July 13, 2016:

> **REQUEST NO. 26:**  Copies of documents sufficient to disclose the constituent materials and the actual manufacturing processes, procedures and conditions used with respect to the making of any synthetic polyisoprene articles in accordance with the teaching of any patent or printed publication that is prior art to the Patents-in-Issue.

> **REQUEST NO. 27:**  Copies of documents sufficient to disclose the qualities and characteristics of any synthetic polyisoprene articles made in accordance with the teaching of any patent or printed publication that is prior art to the Patents-in-Issue.

*See* Ex. 3 hereto.

5.      Claiming that the requested documents were protected by the work product doctrine, RB has failed to produce any documents subject to these requests despite numerous e-mail exchanges and meet-and-confer telephonic conferences.

6.      In an earlier-filed parallel proceeding in the Federal Court of Australia, RB's affiliates judicially admitted the presence of a number of the claimed features of Ansell's patent in the accused RealFeel condoms.  *See* Ex. 4 hereto at ¶ 13; Ex. 5 hereto at ¶ 13(a), (b) and (c)(i).

7.      In light of those judicial admissions, the first discovery that Ansell served in this case was a set of Requests for Admission served January 26, 2016, seeking to establish these same admissions in this case.  *See* Ex. 6 hereto.

8.      Less than two days after those requests for admission were served in this case, counsel for RB's affiliates in the Australian case wrote to Ansell's counsel in Australia, requesting that Ansell consent to the withdrawal of a number of the admissions made in that case.  *See* Ex. 7 hereto.  In that January 28 letter, the following statements were made:

"[A]s you know, our clients have conferred extensively with their expert Dr. Potter in the United Kingdom.

Also, in October 2015, your clients commenced in the United States a patent infringement action equivalent to the present Australian proceedings relying on four US patents related to the patent in issue in the Australian proceedings. In the proceedings in the United States, matters in relation to which our clients made admissions in the Australian proceedings are likely to be in contention. Further, discussions with Dr Potter suggest that admissions made in the Australian case are likely to be inconsistent with the expert evidence.

\* \* \*

We also advise that we are liaising with our clients' US lawyers . . . . "

9.      Ansell did not consent to the withdrawal of the admissions in Australia, and with one minor exception, the motion of RB's affiliates for leave to withdraw the admissions was denied.

10.      Notwithstanding having "conferred extensively with their expert Dr. Potter" in the Australian case, RB's affiliates *did not* seek leave to withdraw the admission that the Durex RealFeel condom "comprises synthetic polyisoprene particles that are bonded to each other through intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks."

11.      Additionally, notwithstanding that its counsel in this case had liaised with Australian counsel, on February 2016, RB expressly admitted that "Durex RealFeel® condoms comprise synthetic polyisoprene particles that are bonded to each other through intra-polyisoprene particle cross-links and inter-polyisoprene particle cross-links."

12.      It was not until March 23, **2017**, that RB's counsel first intimated that it desired to withdraw its admission to Request for Admission No. 4.

13.      During the period between  February 25, 2016 and March 23, 2017, in reliance on the binding effect of RB's admission as to the matter set forth in Request for Admission No.

4, Ansell: (1) refrained from asking interrogatories addressed to this subject; (2) refrained from asking RB in-house technical expert Dr. Richard Arnold questions on this subject at his January 31, 2017 deposition; (3) refrained from asking RB's expert Dr. William Potter questions on this subject at his January 10, 2017 deposition; (4) refrained from proceeding under the Hague Convention to obtain testimony on this subject from the RB affiliate that manufactures the accused condoms; and (5) refrained from engaging experts to prove the presence of this feature in the accused condoms.

14.     Attached hereto as Exhibit 8 is a true and correct copy of portions of RB's Third Amended Initial Invalidity Contentions, served March 20, 2017.

15.     Attached hereto as Exhibit 9 is a true and correct copy of RB's Objections and Responses to Plaintiff's Third Set of Interrogatories (Nos. 3-4).

DATED: April 5, 2017

THOMAS B. KENWORTHY

# *Exhibit 1*

CONFIDENTIAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>RECKITT BENCKISER LLC, )<br><br>Defendant. ) | C.A. No. 1:15-cv-00915-RGA |

## ADDENDUM TO RECKITT BENCKISER LLC'S
## FIRST AMENDED INITIAL INVALIDITY CONTENTIONS

Defendant Reckitt Benckiser LLC ("RB") hereby serves the following addendum to its First Amended Initial Invalidity Contentions on Plaintiff Ansell Healthcare Products LLC ("Plaintiff"). This addendum supplements and provides further support for RB's inherency contentions as set forth in its First Amended Initial Invalidity Contentions. The micrographs in this addendum are merely representative and RB expressly reserves the right to rely on other micrographs as this case proceeds.

### U.S. Patent Publication No. 2004/0169317 ("Wang")

With respect to limitations in the asserted claims directed to substantially uniform crosslinks and uniformity of double bonds, the following TEM micrograph is of an osmium treated sample of a polyisoprene article prepared in accordance with Wang. To the extent such claim limitations inform, with reasonable certainty, those skilled in the art about the scope of the invention and/or are sufficiently enabled/supported by the disclosure in the asserted patents (and RB's contention is that they do not and are not), the micrograph, when evaluated in accordance with the disclosure in the asserted patents, shows at least as much uniformity as does the TEM

CONFIDENTIAL

micrograph of the accused product that appears in Ansell's Fourth Amended Initial Claim Chart and/or the TEM micrograph that appears as Figure 1 in the asserted patents. Thus, to the extent Ansell contends that its TEM micrograph of the accused product shows that these limitations are present in the accused product, and/or that Figure 1 in the asserted patents enables/supports these claim limitations, and to the extent Ansell is correct, the TEM micrograph of Wang below would establish that those limitations are present in articles made in accordance with Wang, and is further support that Wang inherently anticipates and/or renders the claimed invention obvious.



With respect to limitations in the asserted claims directed to non-preferential fracturing and an absence of particle features, the following SEM micrograph is of a sample of a polyisoprene article prepared in accordance with Wang and burst at room temperature. To the extent such claim limitations inform, with reasonable certainty, those skilled in the art about the scope of the invention and/or are sufficiently enabled/supported by the disclosure in the asserted patents (and RB's contention is that they do not and are not), the micrograph, when evaluated in

CONFIDENTIAL

accordance with the disclosure in the asserted patents, shows at least as much non-preferential fracturing and lack of particle features as the SEM micrograph of the accused product that appears in Ansell's Fourth Amended Initial Claim Chart and/or the SEM micrograph that appears as Figure 5 in the asserted patents.  Thus, to the extent Ansell contends that its SEM micrograph of the accused product shows that these limitations are present in the accused product, and/or that Figure 5 in the asserted patents enables/supports these claim limitations, and to the extent Ansell is correct, the SEM micrograph of Wang below would establish that those limitations are present in articles made in accordance with Wang, and is further support that Wang inherently anticipates and/or renders the claimed invention obvious.



With respect to limitations in the asserted claims directed to substantially conchoidal fracturing, the following SEM micrograph is of a sample of a polyisoprene article prepared in accordance with Wang and fractured at liquid nitrogen temperature.  To the extent such claim limitations inform, with reasonable certainty, those skilled in the art about the scope of the invention and/or are sufficiently enabled/supported by the disclosure in the asserted patents (and

CONFIDENTIAL

RB's contention is that they do not and are not), the micrograph, when evaluated in accordance with the disclosure in the asserted patents, shows at least as much conchoidal fracturing as the SEM micrograph of the accused product that appears in Ansell's Fourth Amended Initial Claim Chart and/or the SEM micrograph that appears as Figure 2 in the asserted patents. Thus, to the extent Ansell contends that its SEM micrograph of the accused product shows that these limitations are present in the accused product, and/or that Figure 2 in the asserted patents enables/supports these claim limitations, and to the extent Ansell is correct, the SEM micrograph of Wang below would establish that those limitations are present in articles made in accordance with Wang, and is further support that Wang inherently anticipates and/or renders the claimed invention obvious.



**U.K. Patent Application No. GB 2,436,566A ("Attrill")**

With respect to limitations in the asserted claims directed to substantially uniform crosslinks and uniformity of double bonds, the following TEM micrograph is of an osmium treated sample of a polyisoprene article prepared in accordance with a preferred embodiment

CONFIDENTIAL

disclosed in Attrill.  To the extent such claim limitations inform, with reasonable certainty, those skilled in the art about the scope of the invention and/or are sufficiently enabled/supported by the disclosure in the asserted patents (and RB's contention is that they do not and are not), the micrograph, when evaluated in accordance with the disclosure in the asserted patents, shows at least as much uniformity as does the TEM micrograph of the accused product that appears in Ansell's Fourth Amended Initial Claim Chart and/or the TEM micrograph that appears as Figure 1 in the asserted patents.  Thus, to the extent Ansell contends that its TEM micrograph of the accused product shows that these limitations are present in the accused product, and/or that Figure 1 in the asserted patents enables/supports these claim limitations, and to the extent Ansell is correct, the TEM micrograph of Attrill below would establish that those limitations are present in articles made in accordance with the preferred embodiment disclosed Attrill, and is further support that Attrill inherently anticipates and/or renders the claimed invention obvious.



With respect to limitations in the asserted claims directed to non-preferential fracturing and an absence of particle features, the following SEM micrograph is of a sample of a polyisoprene article prepared in accordance with a preferred embodiment disclosed in Attrill and

CONFIDENTIAL

burst at room temperature.   To the extent such claim limitations inform, with reasonable certainty, those skilled in the art about the scope of the invention and/or are sufficiently enabled/supported by the disclosure in the asserted patents (and RB's contention is that they do not and are not), the micrograph, when evaluated in accordance with the disclosure in the asserted patents, shows at least as much non-preferential fracturing and lack of particle features as the SEM micrograph of the accused product that appears in Ansell's Fourth Amended Initial Claim Chart and/or the SEM micrograph that appears as Figure 5 in the asserted patents.  Thus, to the extent Ansell contends that its SEM micrograph of the accused product shows that these limitations are present in the accused product, and/or that Figure 5 in the asserted patents enables/supports these claim limitations, and to the extent Ansell is correct, the SEM micrograph of Attrill below would establish that those limitations are present in articles made in accordance with Attrill, and is further support that Attrill inherently anticipates and/or renders the claimed invention obvious.



With respect to limitations in the asserted claims directed to substantially conchoidal fracturing, the following SEM micrograph is of a sample of a polyisoprene article prepared in accordance with a preferred embodiment disclosed in Attrill and fractured at liquid nitrogen

6

CONFIDENTIAL

temperature. To the extent such claim limitations inform, with reasonable certainty, those skilled in the art about the scope of the invention and/or are sufficiently enabled/supported by the disclosure in the asserted patents (and RB's contention is that they do not and are not), the micrograph, when evaluated in accordance with the disclosure in the asserted patents, shows at least as much conchoidal fracturing as the SEM micrograph of the accused product that appears in Ansell's Fourth Amended Initial Claim Chart and/or the SEM micrograph that appears as Figure 2 in the asserted patents. Thus, to the extent Ansell contends that its SEM micrograph of the accused product shows that these limitations are present in the accused product, and/or that Figure 2 in the asserted patents enables/supports these claim limitations, and to the extent Ansell is correct, the SEM micrograph of Attrill below would establish that those limitations are present in articles made in accordance with Attrill, and is further support that Attrill inherently anticipates and/or renders the claimed invention obvious.



CONFIDENTIAL

Dated: September 29, 2016

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*[signature]*

_____
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 576-3586
pkraman@ycst.com

-and-

Douglas J. Nash (admitted *pro hac vice*)
John T. Gutkoski (admitted *pro hac vice*)
Denis J. Sullivan (admitted *pro hac vice*)
Kathryn D. Cornish (admitted *pro hac vice*)
Naresh K. Kannan (admitted *pro hac vice*)
BARCLAY DAMON, LLP
One Park Place
300 South State Street
Syracuse, New York 13202
(315) 425-2700

*Attorneys for Defendant*
*Reckitt Benckiser LLC*

8

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, hereby certify that on September 29, 2016, I caused a true and correct copy of the foregoing document to be served on the following counsel of record in the manner indicated:

### BY E-MAIL

Colm F. Connolly, Esquire
David W. Marston Jr., Esquire
Jody C. Barillare, Esquire
Morgan, Lewis & Bockius LLP
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, DE 19801
*cconnolly@morganlewis.com*
*dmarston@morganlewis.com*
*jbarillare@morganlewis.com*

Thomas B. Kenworthy, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
*tkenworthy@morganlewis.com*

*Attorneys for Plaintiff*

Dated:   September 29, 2016

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/  Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
*pkraman@ycst.com*

*Attorneys for Defendant*

*Exhibit 2*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANSELL HEALTHCARE
PRODUCTS LLC,

                    Plaintiff,

        v.

RECKITT BENCKISER LLC,

                    Defendant.

Civil Action No.:

1:15-cv-00915-RGA

## PLAINTIFF'S FOURTH SET OF REQUESTS FOR
## THE PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff Ansell

Healthcare Products LLC requests that on or before 6:00 p.m. on January 6, 2017, defendant

Reckitt Benckiser LLC produce the following documents and things for inspection, copying or

testing at the offices of Morgan, Lewis & Bockius LLP, located at The Nemours Building, 1007

North Orange Street, Suite 501, Wilmington, Delaware  19801.

## DEFINITIONS

1.      The term "RB" means defendant Reckitt Benckiser LLC.

2.      The term "Affiliate" means any entity that controls, is controlled by, or is under

common control with another entity where "control" means direct or indirect beneficial

ownership of more than 50% of the outstanding voting securities of an entity or the ability

otherwise to elect a majority of the board of directors or other managing authority of the other

entity.

3.     The term "Document" means the original and each non-identical copy of any written, printed, typed, recorded, computerized, electronic, taped, graphic, or other matter, in whatever form, whether in final or draft, including but not limited to all materials that constitute "writings," "recordings," or "photographs" within the meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the meaning of Rule 34 of the Federal Rules of Civil Procedure.  The word "Document" includes without limitation electronically stored information (ESI), electronic mail, data stored on computer hard drives, diskettes, memories, tapes, compact discs, or any other computer media, and any other information stored magnetically, electronically, or optically.  Any Document bearing any marks, including without limitation initials, stamped indicia, comments, highlighting, marginalia, or other notations not a part of the original text or reproduction thereof, is a separate Document that is also included in the request.

4.     The term "Australian Proceedings" means Case No. 1180 of 2014 pending in the Federal Court of Australia, New South Wales Registry between Ansell Healthcare Products LLC and Ansell Limited, Applicants, and Reckitt Benckiser Healthcare Australia Pty Limited and Reckitt Benckiser Healthcare (UK) Limited, Respondents.

## SPECIFIC REQUESTS FOR PRODUCTION

## REQUEST NO. 29:

Documents sufficient to disclose the existence and terms of any legal right or authority that RB has to obtain documents from an affiliate of Reckitt Benckiser Group plc.

**RESPONSE:**

**REQUEST NO. 30:**

Documents reflecting all requests for access to Documents made by RB in 2015 or 2016 to an affiliate of Reckitt Benckiser Group plc., and the responses thereto.

**RESPONSE:**

**REQUEST NO. 31:**

A sample (at least 2" x 2") of the material depicted in the TEM micrograph on page 2 of Addendum To RB's First Amended Initial Invalidity Contentions dated September 29, 2016.

**RESPONSE:**

**REQUEST NO. 32:**

A sample (at least 2" x 2") of the material depicted in the SEM micrograph on page 3 of Addendum To RB's First Amended Initial Invalidity Contentions dated September 29, 2016.

**RESPONSE:**

**REQUEST NO. 33:**

A sample (at least 2" x 2") of the material depicted in the SEM micrograph on page 4 of Addendum To RB's First Amended Initial Invalidity Contentions dated September 29, 2016.

**RESPONSE:**

**REQUEST NO. 34:**

A sample (at least 2" x 2") of the material depicted in the TEM micrograph on page 5 of Addendum To RB's First Amended Initial Invalidity Contentions dated September 29, 2016.

**RESPONSE:**

**REQUEST NO. 35:**

A sample (at least 2" x 2") of the material depicted in the SEM micrograph on page 6 of Addendum To RB's First Amended Initial Invalidity Contentions dated September 29, 2016.

**RESPONSE:**

**REQUEST NO. 36:**

A sample (at least 2" x 2") of the material depicted in the SEM micrograph on page 7 of Addendum To RB's First Amended Initial Invalidity Contentions dated September 29, 2016.

**RESPONSE:**

**REQUEST NO. 37:**

Copies of all filings made in the Australian proceedings that are in the possession, custody or control of RB or its agents.

**RESPONSE:**

**REQUEST NO. 38**:

Copies of Documents sufficient to disclose the date on or about which RB received copies of all filings made in the Australian proceedings that are in the possession, custody or control of RB or its agents.

**RESPONSE**:

**REQUEST NO. 39**:

Documents sufficient to disclose any prejudice RB has suffered as a result of the pendency of this lawsuit.

**RESPONSE**:

DATED:  December 7, 2016

Colm F. Connolly (I.D. No. 3151)
David W. Marston Jr. (I.D. No. 3972)
Jody C. Barillare (I.D. No. 5107)
MORGAN, LEWIS & BOCKIUS LLP
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, Delaware  19801
302.574.3000
colm.connolly@morganlewis.com
david.marston@morganlewis.com
jody.barillare@morganlewis.com

*and*

Thomas B. Kenworthy (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
215.963.5000
thomas.kenworthy@morganlewis.com

*Attorneys for Plaintiff*
*Ansell Healthcare Products LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December, 2016, two (2) copies of the foregoing Plaintiff's Fourth Set Of Requests For The Production Of Documents And Things are being served via hand delivery upon:

Adam W. Poff, Esquire
Pilar G. Kraman, Esquire
YOUNG CONAWAY STARGATT
   & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware  19801

*Attorneys for Defendant*
*Reckitt Benckiser LLC*


THOMAS B. KENWORTHY

*Exhibit 3*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

**ANSELL HEALTHCARE**
**PRODUCTS LLC,**

               **Plaintiff,**

    **v.**

**RECKITT BENCKISER LLC,**

               **Defendant.**

**Civil Action No.:**

**1:15-cv-00915-RGA**

### PLAINTIFF'S THIRD SET OF REQUESTS FOR
### THE PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff Ansell Healthcare Products LLC requests that on or before 6:00 p.m. on August 12, 2016, defendant Reckitt Benckiser LLC produce the following documents and things for inspection and copying at the offices of Morgan, Lewis & Bockius LLP, located at The Nemours Building, 1007 North Orange Street, Suite 501, Wilmington, Delaware  19801.

### DEFINITIONS

1.    The term "RB" means defendant Reckitt Benckiser LLC, its corporate parent(s), subsidiaries and/or affiliates.

2.    The term "Document" means the original and each non-identical copy of any written, printed, typed, recorded, computerized, electronic, taped, graphic, or other matter, in whatever form, whether in final or draft, including but not limited to all materials that constitute "writings," "recordings," or "photographs" within the meaning of Rule 1001 of the Federal Rules

of Evidence and all materials that constitute "documents" within the meaning of Rule 34 of the Federal Rules of Civil Procedure. The word "Document" includes without limitation electronically stored information (ESI), electronic mail, data stored on computer hard drives, diskettes, memories, tapes, compact discs, or any other computer media, and any other information stored magnetically, electronically, or optically. Any Document bearing any marks, including without limitation initials, stamped indicia, comments, highlighting, marginalia, or other notations not a part of the original text or reproduction thereof, is a separate Document that is also included in the request.

3.      The term " '412 Patent" means U.S. Patent No. 8,087,412, and the application on which it is based.

4.      The term " '719 Patent" means U.S. Patent No. 8,464,719, and the application on which it is based.

5.      The term " '027 Patent" means U.S. Patent No. 9,074,027, and the application on which it is based.

6.      The term " '029 Patent" means U.S. Patent No. 9,074,029, and the application on which it is based.

7.      The term "Patents-in-Issue" means collectively the '412 Patent, the '719 Patent, the '027 Patent and the '029 Patent.

8.      The term "Accused Condoms" means Durex RealFeel® synthetic polyisoprene condoms.

9.      The term "Australian Proceeding" means the lawsuit filed in the New South Wales Registry of the Federal Court of Australia, accusing Reckitt Benckiser (Australia) Pty.

Ltd. and Reckitt Benckiser Healthcare (UK) Ltd. of infringing Australian Patent No.
2009241426.

## SPECIFIC REQUESTS FOR PRODUCTION

**REQUEST NO. 15:**

The documents considered by Reckitt Benckiser Pty. Ltd. and/or Reckitt Benckiser
Healthcare (UK) Ltd. in making the admissions in paragraphs 4(d), 13(a)ii, 13(b), 13(c)i, 13(c)ii,
13(c)iii, 13(c)iv, 13(c)v, 13(c)vi and 13(c)vii of their Defence to Further Amended Statement of
Claim dated August 13, 2015 filed in the Australian Proceeding.

**RESPONSE:**

**REQUEST NO. 16:**

Copies of the documents considered by RB in making the determination to launch the
Accused Condoms.

**RESPONSE:**

- 3 -

**REQUEST NO. 17:**

Copies of the Affidvit of Andrew Richard Arnold dated June 28, 2016 filed in the

Australian Proceeding, the Annexums thereto, and the documents referenced in the Affidavit.

**RESPONSE:**

**REQUEST NO. 18:**

Documents sufficient to disclose RB's projected profits for the Accused Condoms as of

the date the Accused Condoms were first sold or offered for sale in the United States.

**RESPONSE:**

**REQUEST NO. 19:**

Documents sufficient to disclose RB's actual profits on sales of Accused Condoms in the United States.

**RESPONSE:**

**REQUEST NO. 20:**

Documents sufficient to disclose the demand for synthetic polyisoprene condoms in the United States during the period beginning January 1, 2012.

**RESPONSE:**

- 5 -

**REQUEST NO. 21:**

      To the extent RB contends that there are acceptable noninfringing substitutes for the

Accused Condoms, all documents that support or refute that contention.

**RESPONSE:**

**REQUEST NO. 22:**

      All documents upon which RB may rely to support its contention as to what a reasonable

royalty should be in this case.

**RESPONSE:**

**REQUEST NO. 23:**

All documents upon which RB may rely to support its contentions that any claims of the Patents-in-Issue are invalid.

**RESPONSE:**

**REQUEST NO. 24:**

All patent licenses to which RB is a party relating to dipped latex articles.

**RESPONSE:**

**REQUEST NO. 25:**

All documents upon which RB may rely to support a contention that its alleged infringement of the Patents-in-Issue was not willful.

**RESPONSE:**

**REQUEST NO. 26:**

Copies of documents sufficient to disclose the constituent materials and the actual manufacturing processes, procedures and conditions used with respect to the making of any synthetic polyisoprene articles in accordance with the teaching of any patent or printed publication that is prior art to the Patents-in-Issue.

**RESPONSE:**

**REQUEST NO. 27:**

Copies of documents sufficient to disclose the qualities and characteristics of any synthetic polyisoprene articles made in accordance with the teaching of any patent or printed publication that is prior art to the Patents-in-Issue.

**RESPONSE:**

**REQUEST NO. 28:**

Copies of documents sufficient to reflect any comparison between the claims of the Patents-in-Issue and any synthetic polyisoprene article made in accordance with the teaching of any patent or printed publication that is prior art to the Patents-in-Issue.

**RESPONSE:**

DATED:  July 13, 2016

_____ /s/   Thomas B. Kenworthy _____

Colm F. Connolly (I.D. No. 3151)
David W. Marston Jr. (I.D. No. 3972)
Jody C. Barillare (I.D. No. 5107)
MORGAN, LEWIS & BOCKIUS LLP
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, Delaware  19801
302.574.3000
colm.connolly@morganlewis.com
david.marston@morganlewis.com
jody.barillare@morganlewis.com

*and*

Thomas B. Kenworthy (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
215.963.5000
thomas.kenworthy@morganlewis.com

*Attorneys for Plaintiff*
*Ansell Healthcare Products LLC*

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July, 2016, two (2) copies of the foregoing

Plaintiff's Third Set Of Requests For The Production Of Documents And Things are being

served via hand delivery upon:

>      Pilar G. Kraman, Esquire
>      YOUNG CONAWAY STARGATT
>           & TAYLOR, LLP
>      Rodney Square
>      1000 North King Street
>      Wilmington, Delaware  19801
>
>      *Attorney for Defendant*
>      *Reckitt Benckiser LLC*

>                    /s/   Thomas B. Kenworthy
>                    THOMAS B. KENWORTHY

*Exhibit 4*

Form 17
Rule 8.05(1)(a)

## Further Amended Statement of claim

No.     1180 of 2014

Federal Court of Australia

District Registry: New South Wales

Division: General

**Ansell Healthcare Products LLC** and another named in the schedule

Applicants

**Reckitt Benckiser (Australia) Pty Limited (ACN 003 274 655)** and others named in the schedule

Respondents

### A.    The Parties

1.    The first applicant, Ansell Healthcare Products LLC (**Ansell LLC**):

   (a)    is, and has at all material times been, a company incorporated in the United States of America;

   (b)    is entitled to sue in and by its corporate name and style;

   (c)    is, and has at all material times been, the registered proprietor of Australian Patent No. 2009241426 titled "Dip-formed synthetic polyisoprene latex articles with improved intraparticle and interparticle crosslinks" (the **Patent**); and

   (d)    licenses, and has since 27 April 2009 licensed, the second applicant to exploit the invention claimed in the Patent and to authorise other persons to exploit that invention on the basis pleaded in paragraph 2(c) below.

2.    The second applicant, Ansell Limited (**Ansell**):

   (a)    is, and has at all material times been, a company incorporated in Australia pursuant to the *Corporations Act 2001* (Cth);

Filed on behalf of Ansell Healthcare Products LLC and Ansell Limited (Applicants)
Prepared by John Afaras
Law firm:  SPRUSON & FERGUSON LAWYERS PTY LIMITED (Law firm ref:  L00008)
Tel:  (02) 9393 0300      Fax:  (02) 9267 9974
Email:  john.afaras@spruson.com
**Address for service**
Spruson & Ferguson Lawyers Pty Limited, Level 35 St Martine Tower, 31 Market Street, Sydney NSW 2000
(10172462_1):EKS

2

(b)     is entitled to sue in and by its corporate name and style;

(c)     is, and has since 27 April 2009 been, the exclusive licensee of the Patent within the meaning of the *Patents Act 1990* (Cth) (the **Act**);

**Particulars**

i.   Exclusive licence agreement between Ansell LLC and Ansell effective 27 April 2009.

(d)     is, and was at all material times, engaged in a business including the importation, promotion, sale and supply in Australia of condom products; and

(e)     in the course of the business pleaded in sub-paragraph (d) above, authorises and has authorised others to exploit the invention claimed in the Patent in Australia.

3.     The first respondent, Reckitt Benckiser (Australia) Pty Limited (**RB Australia**):

(a)     is, and has at all material times been, a company incorporated in Australia pursuant to the *Corporations Act 2001* (Cth);

(b)     is able to be sued in and by its corporate name and style;

(b1)    is, and has at all material times been, a principal subsidiary undertaking of Reckitt Benckiser Group Plc; and

(c)     is, and has at all material times been, a company that is related to the second to fourth and third respondents in the manner pleaded in paragraphs 4 to 5 6 below.

4.     The second respondent, Reckitt Benckiser Healthcare (UK) Limited (**RB Healthcare**):

(a)     is, and has at all material times been, a company incorporated in the United Kingdom;

(b)     is able to be sued in and by its corporate name and style;

(c)     is, and has at all material times been, a principal subsidiary undertaking of Reckitt Benckiser Group Plc the fourth respondent; and

(d)     is the manufacturer of the condom product that is referred to in the pleading at paragraph 10(a) below.

5.     The third respondent, Reckitt Benckiser Healthcare Australia Pty Limited:

3

(a)     is, and has at all material times been, a company incorporated in Australia pursuant to the *Corporations Act 2001* (Cth);

(b)     is able to be sued in and by its corporate name and style; and

(c)     is the holding company of RB Australia.

6.     [Not used]

~~The fourth respondent, Reckitt Benckiser Plc:~~

~~(a)     is, and has at all material times been, a company incorporated in the United Kingdom;~~

~~(b)     is able to be sued in and by its corporate name and style; and~~

~~(c)     is the ultimate holding company of RB Australia.~~

7.     The first and second respondents, or alternatively all of the respondents, are, and have at all material times been, engaged in a business including the importation, promotion, sale and supply in Australia of condom products.

**B.     The Patent**

8.     The complete specification of the Patent was published and became open to the public for inspection on 5 November 2009.

9.     The Patent is, and has been at all material times, valid, subsisting and in full force and effect.

**Particulars**

i.     The Patent was applied for on 27 April 2009.

ii.     The Patent was sealed on 6 September 2012.

iii.     The claims of the Patent have the priority date of 1 May 2008.

**C.     Patent Infringement**

10.     From a date or dates unknown to the applicants, but prior to the commencement of this proceeding, RB Australia has, or alternatively all of the respondents have:

(a)     imported a non-latex condom product branded with the name "Durex RealFeel" (the **Durex Product**) into Australia;

4

(b)     sold, supplied or otherwise disposed of the Durex Product in Australia;

(c)     offered to sell, supply or otherwise dispose of the Durex Product in Australia;

(d)     kept the Durex Product in Australia for the purpose of doing the acts referred to in sub-paragraphs (a) to (c) above; and

(e)     authorised, procured, induced or joined in a common design with other persons to engage in the acts referred to in sub-paragraphs (a) to (c) above.

**Particulars**

i.   Sale of the Durex Product to the solicitors for the applicants at Woolworths, Town Hall, George Street, Sydney on 29 August 2014.

ii.  RB Australia Webpage for the Durex Product at the URL www.durex.com.au/products/condoms/real-feel/, referred to in the letter of Spruson & Ferguson Lawyers to RB Australia dated 3 March 2014.

iii. The "other persons" the applicants rely on for the purposes of sub-paragraph (e) above are retailers and purchasers of the Durex Product.

iv.  Further particulars may be provided following discovery and other interlocutory steps.

11.   To the extent that RB Australia has done the acts pleaded in paragraph 10 above, the second, and third and fourth respondents:

(a)     have been a party to, or participated in the doing of, or induced, procured or joined in a common design with RB Australia, to do those acts;

(b)     further or alternatively, have authorised RB Australia to do those acts.

**Particulars**

i.   The applicants rely on the matters pleaded and particularised in paragraphs 3 to 5 and 7 above.

***Claim 1 of the Patent***

12.   The Durex Product is a synthetic polyisoprene elastomeric article.

13.   The Durex Product comprises:

(a)     synthetic polyisoprene particles that are:

5

   i.    pre-vulcanized and

   ii.    cured;

(b)    synthetic polyisoprene particles that are bonded to each other through intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks;

(c)    wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniform in the synthetic polyisoprene latex article.

### Particulars of the "pre-vulcanised" feature

i.    Sulfur has penetrated, and is present within, the synthetic polyisoprene particles.

ii.    The sulfur is distributed in a substantially uniform manner within the synthetic polyisoprene particles.

iii.    The sulfur has formed intra-particle cross-links within the synthetic polyisoprene particles.

iv.    Zinc dithiocarbamate is present outside the synthetic polyisoprene particles, and decorates their exterior.

v.    Zinc dithiocarbamate is a catalyst that breaks down sulfur atoms into short chain atoms that are able to penetrate into synthetic polyisoprene particles.

vi.    The intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniform.

vii.    <u>At the time of dipping, the polyisoprene latex has a pre-vulcanisate relaxed modulus value that exceeds the range of "less than 0.1 MPa" that is referred to in paragraph 15 of the Patent.</u>

viii.    In the premises of the above, the synthetic polyisoprene particles in the Durex Product are "pre-vulcanised".

ix.    The applicants reserve their right to provide further particulars following discovery or other interlocutory steps.

14.    By reason of the matters pleaded in paragraphs 12 to 13 above, the Durex Product has each integer of claim 1 of the Patent.

6

*Claim 2 of the Patent*

15.  The Durex Product exhibits a substantially conchoidal fracture when fractured at liquid nitrogen temperature.

16.  By reason of the matters pleaded in paragraphs 12 to 14 and 15 above, the Durex Product has each integer of claim 2 of the Patent.

*Claim 3 of the Patent*

17.  A scanning electron microscopic observation of a fracture surface obtained by rupture of the Durex Product at room temperature shows absence of intra-polyisoprene particle and inter-polyisoprene particle features.

18.  By reason of the matters pleaded in paragraphs 12 to 14 and 17 above, the Durex Product has each integer of claim 3 of the Patent.

*Claim 4 of the Patent*

19.  Scanning electron microscopic zinc and sulfur x-ray maps observation of a fracture surface of the Durex Product obtained by fracture of that product at liquid nitrogen temperature, and rupture at room temperature, shows the presence of sulfur within a polyisoprene particle that is decorated by zinc.

20.  By reason of the matters pleaded in paragraphs 12 to 14 and 19 above, the Durex Product has each integer of claim 4 of the Patent.

*Claim 6 of the Patent*

21.  Microprobe elemental analysis by electron microscopy shows an accumulation of zinc surrounding the synthetic polyisoprene particles in the Durex Product.

22.  By reason of the matters pleaded in paragraphs 12 to 14 and 21 above, the Durex Product has each integer of claim 6 of the Patent.

*Claim 8 of the Patent*

23.  Scanning electron microscopy of the Durex Product illustrates a fracture surface that passes through both inter-particle regions and intra-particle regions non-preferentially.

24.  By reason of the matters pleaded in paragraphs 12 to 14 and 23 above, the Durex Product has each integer of claim 8 of the Patent.

7

*Claim 9 of the Patent*

25. The Durex Product is a condom.

26. By reason of the matters pleaded in paragraphs 12 to 14 and 25 above, the Durex Product has each integer of claim 9 of the Patent.

~~*Claim 13 of the Patent*~~

~~27.   The Durex Product is manufactured by the steps of:~~

> ~~(a)   adding to an aqueous latex of synthetic polyisoprene particles a pre-vulcanization composition comprising soluble sulfur, a zinc dithiocarbamate and a surfactant;~~

> ~~(b)   pre-vulcanizing the synthetic polyisoprene particles in said latex;~~

> ~~(c)   adding to said latex a post-vulcanization composition;~~

> ~~(d)   dipping a coagulant-free or coagulant-coated former in the shape of a condom into said latex one or more times to form a latex film; and~~

> ~~(e)   curing said latex film during post-vulcanization;~~

~~to produce inter-particle crosslinks and intra-particle crosslinks, wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniform.~~

~~**Particulars**~~

> ~~i.   The Durex Product is a synthetic polyisoprene elastomeric article.~~

> ~~ii.   Sulfur has penetrated, and is present within, the synthetic polyisoprene particles.~~

> ~~iii.   The sulfur is distributed in a substantially uniform manner within the synthetic polyisoprene particles.~~

> ~~iv.   The sulfur has formed intra-particle crosslinks within the synthetic polyisoprene particles.~~

> ~~v.   Zinc dithiocarbamate is present outside the synthetic polyisoprene particles, and decorates their exterior.~~

8

vi. ~~Zinc dithiocarbamate is a catalyst that breaks down sulfur atoms into short chain atoms that are able to penetrate into synthetic polyisoprene particles.~~

vii. ~~Sodium dodecyl benzene sulphonate (SDBS) is a surfactant and is present in the Durex Product.~~

viii. ~~The Durex Product has intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks that are substantially uniform.~~

ix. ~~In the premises of the above, the clear and strong inference is that the Durex Product has been manufactured using the steps of claim 13 of the Patent.~~

x. ~~Further, or in the alternative to sub-paragraph (ix), and in the premises of the above:~~

  1. ~~the Durex Product is identical to the synthetic elastomeric article that is referred to in claim 13 of the Patent; and~~

  2. ~~it is very likely that the Durex Product was manufactured by the steps set out in claim 13 of the Patent.~~

x. ~~The applicants have taken reasonable steps to find out the process that is actually used by RB Healthcare to manufacture the Durex Product, but have been unable to do so. The applicants refer, in particular, to:~~

  1. ~~Letter of Spruson & Ferguson Lawyers to RB Australia's solicitors, Corrs Chambers Westgarth dated 12 May 2014.~~

  2. ~~Letter of Corrs Chambers Westgarth to Spruson & Ferguson Lawyers dated 26 May 2014.~~

  3. ~~Letter of Spruson & Ferguson Lawyers to Corrs Chambers Westgarth dated 29 September 2014.~~

  4. ~~Letter of Corrs Chambers Westgarth to Spruson & Ferguson Lawyers dated 14 October 2014.~~

xi. ~~By force of s 121A of the Act, absent any proof to the contrary, the Durex Product is taken to have been produced by the process claimed in claim 13 of the Patent.~~

9

xii.   The applicants reserve their right to provide further particulars following discovery or other interlocutory steps.

28.   By reason of the matters pleaded in paragraph 27 above, the Durex Product has each integer of claim 13 of the Patent.

*Claim 16 of the Patent*

29.   The surfactant used to manufacture the Durex Product is SDBS.

30.   SDBS is an alkyl aryl sulphonate.

31.   By reason of the matters pleaded in paragraphs 27 to 30 above, the Durex Product has each integer of claim 16 of the Patent.

*Claim 17 of the Patent*

32.   The surfactant used in the method of manufacture of the Durex Product is SDBS.

33.   By reason of the matters pleaded in paragraphs 27 to 28 and 32 above, the Durex Product has each integer of claim 17 of the Patent.

34.   The applicants have not licensed or authorised the respondents to engage in the acts that are pleaded in paragraphs 10 and 11 above.

35.   By reason of the matters pleaded in paragraphs 10 to 26 36 above, the respondents, and each of them, have infringed claims 1 to 4, 6, and 8 to 9, 13, 16 and 17 of the Patent.

**D.     Damages and Relief**

36.   The respondents threaten to, intend to and will unless restrained, continue to engage in the infringing acts pleaded in paragraphs 9 to 35 37 above.

37.   The applicants have suffered, and will continue to suffer, loss and damage by reason of the infringing acts pleaded in paragraphs 9 to 35 37 above.

**Particulars**

i.   Loss of sales of the applicants' non-latex condom product "Skyn", which is in direct competition with the Durex Product.

ii.   The applicants are unable to provide full particulars of their loss and damage until after discovery is given by the respondents in respect of all instances of

10

infringement and other matters relevant to the quantification of loss or damage.

iii.   The applicants will seek relief in respect of all such instances of infringement.

iv.   In accordance with their rights under section 57 of the Act, the applicants will claim relief in respect of all infringements occurring on and after the date on which the complete specification of the Patent became open to public inspection.

38.   The respondents have made, and will continue to make, profits by reason of the infringing acts pleaded in paragraphs 9 to 35 37 above.

### Particulars

i.   The applicants are unable to provide particulars of such profits until after discovery is given by the respondents in respect of all instances of infringement and matters relevant to the quantification of profit.

ii.   The applicants will seek relief in respect of all such instances of infringement.

iii.   In accordance with their rights under section 57 of the Act, the applicants will claim relief in respect of all infringements occurring on and after the date on which the complete specification of the Patent became open to public inspection.

39.   In the course of engaging in the acts pleaded in paragraphs 10 and 11 above, the respondents have, since at least 3 March 2014:

(a)   known of the existence of the Patent;

(b)   known that the applicants allege the acts constitute an infringement of the Patent;

(c)   acted, and continue to act, in disregard of the applicants' rights conferred by the Patent;

(d)   known, and intended, that substantial benefit would accrue to them by engaging in the acts; and

(e)   known and intended, or alternatively been aware of the real likelihood, that the acts would cause the applicants to suffer loss or damage.

11

### Particulars

i.   Letter dated 3 March 2014 from the applicants' solicitors, Spruson &
     Ferguson Lawyers to RB Australia.  It may be inferred the other respondents
     became aware of the contents of this letter by reason of their corporate
     relationship with RB Australia.

ii.  The respondents have continued to engage in the acts pleaded above.

iii. Further particulars of the knowledge and intention of the respondents may be
     provided following discovery or other interlocutory processes.

40.  The circumstances pleaded and particularised in paragraph 39 44 above make it
     appropriate for the Court to award additional damages under s 122(1A) of the Act.

41.  In the premises, the applicants claim the relief specified in the accompanying amended
     originating application.

Date: 20 February 2015 22 June 2015

Signed by John Afaras
Lawyer for the Applicants

This amended pleading was prepared by John Afaras, Lawyer, Elizabeth Swan, Lawyer and
Chris Burgess, Barrister.

12

### Certificate of lawyer

I John Afaras certify to the Court that, in relation to the statement of claim filed on behalf of the Applicants, the factual and legal material available to me at present provides a proper basis for each allegation in the pleading.

Date: 20 February 2015 22 June 2015

Signed by John Afaras
Lawyer for the Applicants

13

**Schedule**

No NSD <u>1180</u> of 2014

Federal Court of Australia

District Registry:  New South Wales

Division:  General

**Applicants**

Second Applicant:        Ansell Limited

(ACN 004 085 330)

Second Respondent:        Reckitt Benckiser Healthcare (UK) Limited

Third Respondent        Reckitt Benckiser Healthcare Australia Pty Limited

~~Fourth Respondent        Reckitt Benckiser Plc~~

Date:  ~~20 February 2015~~ 22 June 2015

*Exhibit 5*

Form 33
Rule 16.32

## Defence to Further Amended Statement of Claim

No.    NSD1180 of 2014

Federal Court of Australia

District Registry: New South Wales

Division: General

**Ansell Healthcare Products LLC** and another named in the schedule

Applicants

**Reckitt Benckiser (Australia) Pty Limited (ACN 003 274 655)** and others named in the
schedule

Respondents

In this defence:

**Patent** means Australian Patent No 2009241426.

**Register** means the Register of Patents as defined in the *Patents Act 1990*.

1.    In answer to paragraph 1 of the Further Amended Statement of Claim, the Respondents:

    (a)    admit the matters alleged in sub-paragraphs (a) to (c); and

    (b)    do not know and therefore cannot admit the matters alleged in sub-paragraph (d).

2.    In answer to paragraph 2 of the Further Amended Statement of Claim, the Respondents:

    (a)    admit the matters alleged in sub-paragraphs (a) and (b);

    (b)    admit that from 20 November 2014 the Second Applicant has been recorded on the
        Register as the exclusive licensee of the Patent; and

| Filed on behalf of | The Respondents |
| Prepared by | Odette Margaret Gourley |
| Law firm | Corrs Chambers Westgarth |
| Tel    02 9210 6066 | Fax    02 9210 6611 |
| Email    Odette.Gourley@Corrs.com.au | |
| Address for service | Level 17, 8 Chifley, 8-12 Chifley Square, Sydney NSW 2000 |

[Form approved 01/08/2011]

2

(c)    otherwise, do not know and therefore cannot admit the matters alleged in the paragraph.

3.    The Respondents admit the matters alleged in paragraph 3 of the Further Amended Statement of Claim.

4.    The Respondents admit the matters alleged in paragraph 4 of the Further Amended Statement of Claim.

5.    The Respondents admit the matters alleged in paragraph 5 of the Further Amended Statement of Claim.

6.    [not used]

7.    In answer to paragraph 7 of the Further Amended Statement of Claim, the Respondents:

(a)    say that the First Respondent carries on business in Australia importing certain products including certain condom products, and promoting, selling and supplying those products; and

(b)    otherwise, deny the matters alleged in the paragraph.

8.    The Respondents admit the matters alleged in paragraph 8 of the Further Amended Statement of Claim.

9.    In answer to paragraph 9 of the Further Amended Statement of Claim, the Respondents:

(a)    admit that the Patent appears on the Register;

(b)    say that the asserted claims of the Patent have at all times been invalid and liable to be revoked for the reasons set out in the Cross-Claim and Particulars of Invalidity; and

(c)    otherwise, deny the matters alleged in the paragraph.

10.    In answer to paragraph 10 of the Further Amended Statement of Claim, the Respondents:

(a)    admit the matters alleged in sub-paragraphs (a) to (d); and

(b)    deny the matters alleged in sub-paragraph (e).

11.    In answer to paragraph 11 of the Further Amended Statement of Claim, the Respondents:

(a)    repeat sub-paragraph 10(a) of this Defence; and

14058674

3

(b)   otherwise, deny the matters alleged in the paragraph.

12.   The Respondents admit the matters alleged in paragraph 12 of the Further Amended Statement of Claim.

13.   In answer to paragraph 13 of the Further Amended Statement of Claim, the Respondents:

(a)   admit that the Durex Product comprises synthetic polyisoprene particles that are cured;

(b)   admit the matters alleged in sub-paragraphs (b) and (c);

(c)   as to the Particulars (i) to (viii) of paragraph 13:

(i)   say that the matters set out in Particulars (i) to (vi) apply to the Durex Product; but deny that by reason of these matters the synthetic polyisoprene particles in the Durex Product are "pre-vulcanised" as alleged in Particular (viii);

(ii)   as to Particular (vii):

A.   admit that the prevulcanisate relaxed modulus (PRM) value for the polyisoprene latex of the Durex Product "at the time of dipping" exceeds the range of "less than 0.1MPa";

B.   say that paragraph 15 of the Patent does not refer to the PRM value "at the time of dipping" as alleged in particular (vii) of Paragraph 13 of the Further Amended Statement of Claim and therefore deny that the Durex Product is "pre-vulcanised" as alleged; and

(d)   otherwise, deny the matters alleged in the paragraph.

14.   The Respondents deny the matters alleged in paragraph 14 of the Further Amended Statement of Claim.

15.   The Respondents admit the matters alleged in paragraph 15 of the Further Amended Statement of Claim.

16.   In answer to paragraph 16 of the Further Amended Statement of Claim, the Respondents:

(a)   repeat paragraphs 12 to 14 and 15 of this Defence; and

(b)   otherwise, deny the matters alleged in the paragraph.

14058674

4

17. The Respondents deny the matters alleged in paragraph 17 of the Further Amended Statement of Claim.

18. The Respondents deny the matters alleged in paragraph 18 of the Further Amended Statement of Claim.

19. The Respondents deny the matters alleged in paragraph 19 of the Further Amended Statement of Claim.

20. The Respondents deny the matters alleged in paragraph 20 of the Further Amended Statement of Claim.

21. The Respondents admit the matters alleged in paragraph 21 of the Further Amended Statement of Claim.

22. In answer to paragraph 22 of the Further Amended Statement of Claim, the Respondents:

    (a)   repeat paragraphs 12 to 14 and 21 of this Defence; and

    (b)   otherwise, deny the matters alleged in the paragraph.

23. The Respondents deny the matters alleged in paragraph 23 of the Further Amended Statement of Claim.

24. The Respondents deny the matters alleged in paragraph 24 of the Further Amended Statement of Claim.

25. The Respondents admit the matters alleged in paragraph 25 of the Further Amended Statement of Claim.

26. In answer to paragraph 26 of the Further Amended Statement of Claim, the Respondents:

    (a)   repeat paragraphs 12 to 14 and 24 of this Defence; and

    (b)   otherwise, deny the matters alleged in the paragraph.

27. [not used]

28. [not used]

29. [not used]

30. [not used]

14058674

5

31.   [not used]

32.   [not used]

33.   [not used]

34.   In answer to paragraph 34 of the Further Amended Statement of Claim, the Respondents:

    (a)   repeat paragraphs 10 and 11 of this Defence;

    (b)   admit that the Applicants have not licensed or authorised the Respondents to engage in the acts referred to in paragraphs 10 and 11 of this Defence;

    (c)   say that the Respondents did not need any licence to engage in the acts referred to in paragraphs 10 and 11 of this Defence; and

    (d)   otherwise, deny the matters alleged in the paragraph.

35.   The Respondents deny the matters alleged in paragraph 35 of the Further Amended Statement of Claim.

36.   The Respondents deny the matters alleged in paragraph 36 of the Further Amended Statement of Claim.

37.   The Respondents deny the matters alleged in paragraph 37 of the Further Amended Statement of Claim.

38.   The Respondents deny the matters alleged in paragraph 38 of the Further Amended Statement of Claim.

39.   In answer to paragraph 39 of the Further Amended Statement of Claim, the Respondents:

    (a)   admit that the Respondents have been aware of the existence of the Patent since at least 3 March 2014;

    (b)   otherwise, deny the matters alleged in the paragraph.

40.   The Respondents deny the matters alleged in paragraph 40 of the Further Amended Statement of Claim.

41.   In answer to paragraph 41 of the Further Amended Statement of Claim, the Respondents deny that the Applicants are entitled to the relief set out in the Further Amended Originating Application or at all.

6

42.   In further answer to the Further Amended Statement of Claim, the Respondents rely on s 119 of the *Patents Act 1990* in the event that any of claims 1 to 4, 6, 8 and 9 of the Patent are found infringed and valid (both of which are denied).

**Particulars**

Immediately before the priority date of the claims of the Patent asserted to be infringed, non-latex condoms having features relevantly the same as the Durex Product were manufactured outside Australia and imported into, offered for sale, supplied, kept and otherwise disposed of, in Australia, by one or more of the Respondents and/or their predecessors in title.

Date:       13 August 2015

Signed by Odette Margaret Gourley

Lawyer for the Respondents

This pleading was prepared by Odette Gourley, and settled by Katrina Howard SC and Julian Cooke.

14058674

7

## Certificate of lawyer

I Odette Margaret Gourley certify to the Court that, in relation to the defence filed on behalf of the Respondent, the factual and legal material available to me at present provides a proper basis for:

(a)    each allegation in the pleading; and

(b)    each denial in the pleading; and

(c)    each non admission in the pleading.

Date:        13 August 2015

_Signed by Odette Margaret Gourley_

Lawyer for the Respondents

8

**Schedule**

No.    1180 of 2014

Federal Court of Australia

District Registry: New South Wales

Division: General

**Applicants**

Second Applicant:    Ansell Limited

(ACN 004 085 330)

**Respondents**

Second Respondent:  Reckitt Benckiser Healthcare (UK) Limited

Third Respondent:    Reckitt Benckiser Healthcare Australia Pty Limited

*Exhibit 6*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANSELL HEALTHCARE
PRODUCTS LLC,

                    **Plaintiff,**

   **v.**

RECKITT BENCKISER LLC,

                    **Defendant.**

Civil Action No.:

1:15-cv-00915-RGA

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, plaintiff Ansell Healthcare Products LLC requests that defendant Reckitt Benckiser LLC admit, for the purposes of this action only, the truth of the following matters:

## REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

The Durex RealFeel® condoms that are imported into and sold in Australia are manufactured at the same location in Thailand, using the same equipment, materials, procedures and processing conditions as the Durex RealFeel® condoms that Reckitt Benckiser LLC imports into and sells in the United States.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 2:**

Durex RealFeel® condoms are synthetic polyisoprene elastomeric articles.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 3:**

Durex RealFeel® condoms comprise synthetic polyisoprene particles that are cured.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 4:**

Durex RealFeel® condoms comprise synthetic polyisoprene particles that are bonded to each other through intra-polyisoprene particle cross-links and inter-polyisoprene particle cross-links.

**RESPONSE:**

- 2 -

**REQUEST FOR ADMISSION NO. 5:**

The intra-polyisoprene particle cross-links and the inter-polyisoprene particle cross-links in Durex RealFeel® condoms are substantially uniform.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 6:**

Sulfur has penetrated, and is present within, the synthetic polyisoprene particles of Durex RealFeel® condoms.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 7:**

Sulfur is distributed in a substantially uniform manner within the synthetic polyisoprene particles of Durex RealFeel® condoms.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 8:**

Sulfur has formed intra-particle cross-links within the synthetic polyisoprene particles of Durex RealFeel® condoms.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 9:**

In Durex RealFeel® condoms, zinc dithiocarbamate is present outside the synthetic polyisoprene particles and decorates their exterior.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 10:**

In the manufacture of Durex RealFeel® condoms, zinc dithiocarbamate is a catalyst that breaks down sulfur atoms into short chain atoms that are able to penetrate into the synthetic polyisoprene particles.

**RESPONSE:**

- 4 -

**<u>REQUEST FOR ADMISSION NO. 11</u>:**

In the manufacture of Durex RealFeel® condoms, at the time of dipping, the polyisoprene latex has a pre-vulcanisate relaxed modulus value that exceeds the range of "less than 0.1 MPa."

**<u>RESPONSE</u>:**

**<u>REQUEST FOR ADMISSION NO. 12</u>:**

Durex RealFeel® condoms exhibit a substantially conchoidal fracture when fractured at liquid nitrogen temperature.

**<u>RESPONSE</u>:**

- 5 -

DATED:  January 26, 2016

Colm F. Connolly (I.D. No. 3151)
David W. Marston Jr. (I.D. No. 3972)
Jody C. Barillare (I.D. No. 5107)
MORGAN, LEWIS & BOCKIUS LLP
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, Delaware  19801
302.574.3000
cconnolly@morganlewis.com
dmarston@morganlewis.com
jbarillare@morganlewis.com

*and*

Thomas B. Kenworthy (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
215.963.5000
tkenworthy@morganlewis.com

*Attorneys for Plaintiff*
*Ansell Healthcare Products LLC*

- 6 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of January, 2016, two (2) copies of the foregoing

Plaintiff's First Set Of Requests For Admission are being served via hand delivery upon:

Pilar G. Kraman, Esquire
YOUNG CONAWAY STARGATT
    & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware  19801

*Attorney for Defendant*
*Reckitt Benckiser LLC*

THOMAS B. KENWORTHY

*Exhibit 7*

**Our reference**
OMG/SJ/RECK14063-9103827

8 Chifley
8-12 Chifley Square Sydney NSW 2000
GPO Box 9925 Sydney NSW 2001
Tel +61 2 9210 6500
Fax +61 2 9210 6611
**www.corrs.com.au**



Sydney
Melbourne
Brisbane
Perth

28 January 2016

**By email**: john.afaras@spruson.com

**Contact**
Odette Gourley (02) 9210 6066
Email: odette.gourley@corrs.com.au

Mr John Afaras
Spruson & Ferguson
Level 3, St Martins Tower
31 Market Street
Sydney NSW 2000

Dear Colleagues

## Reckitt Benckiser (Australia) Pty Ltd & Ors ats Ansell Healthcare Products LLC & Anor
## Federal Court of Australia Proceedings NSD 1180 of 2014

As you are aware, before and following the commencement of these proceedings by your clients, our clients have taken a number of steps to endeavour to resolve the litigation without proceeding to a fully contested hearing.  We do not recite each of those efforts but they include efforts to resolve the proceedings on an accelerated basis by determining key issues between the parties and in particular the construction of "pre-vulcanised" in the claims of your clients' patent in suit alleged to be infringed by our clients' product.

To that end, our clients made a number of admissions including the admissions made in paragraphs 13, 15 and 21 of the defence to the further amended statement of claim.

Notwithstanding those efforts which included advocating a mediation which was ordered, and which proceeded on 29 October 2015 without success, the proceedings now appear likely to proceed to a fully contested hearing.  To that end, as you know, our clients have conferred extensively with their expert Dr Potter in the United Kingdom.

Also, in October 2015, your clients commenced in the United States a patent infringement action equivalent to the present Australian proceedings relying on four US patents related to the patent in issue in the Australian proceedings.  In the proceedings in the United States, matters in relation to which our clients made admissions in the Australian proceedings are likely to be in contention.  Further, discussions with Dr Potter suggest that admissions made in the Australian case are likely to be inconsistent with the expert evidence.

As a result of these various matters, also, our clients now wish to rely on additional particulars of invalidity of the patent in suit.

We therefore serve herewith amended particulars of invalidity and a further amended defence each marked up to indicate the revisions.  Given the early stage of the

15134559/1

28 January 2016
Spruson & Ferguson
**Reckitt Benckiser (Australia) Pty Ltd & Ors ats Ansell
Healthcare Products LLC & Anor
Federal Court of Australia Proceedings NSD 1180 of** 2014



proceedings ie no evidence has been filed, we would expect that leave would be given to withdraw the admissions and rely on the amended documents, and we would hope that this could be by consent.

In relation to the timetable, we acknowledge receipt of your letter of 27 January in response to our correspondence of 14 January.  We appreciate the indicated consent to the requested extension.

As to the matters raised in your letter of 27 January concerning the images on which your clients rely, our clients do not make the admission requested in paragraph (a) on the second page of your 27 January letter.

We also advise that we are liaising with our clients' US lawyers in relation to the timing of experiments that will be conducted for the purpose of the US and Australian cases.

Given that and the issues that arise in relation to your clients' experiments, we will also provide separately to you in the next week or so a proposed revised timetable providing for exchange of experimental protocols and comments thereon before coming back before the judge.


Yours faithfully
**Corrs Chambers Westgarth**


**Odette Gourley**
Partner

*Exhibit 8*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANSELL HEALTHCARE
PRODUCTS LLC,

        Plaintiff,

    v.

RECKITT BENCKISER LLC,

        Defendant.

C.A. No. 1:15-cv-00915-RGA

## DEFENDANT RECKITT BENCKISER LLC'S
## THIRD AMENDED INITIAL INVALIDITY CONTENTIONS

In view of the Court's Memorandum and Opinion dated March 16, 2017 concerning claim construction, defendant Reckitt Benckiser LLC ("RB") hereby serves these Third Amended Initial Invalidity Contentions on Plaintiff Ansell Healthcare Products LLC ("Plaintiff").

## I.    INTRODUCTORY STATEMENT

RB provides its amended preliminary contentions regarding the asserted claims of U.S. Patent No. 8,087,412 (the "'412 Patent"), U.S. Patent No. 8,464,719 (the "'719 Patent"), U.S. Patent No. 9,074,027 (the "'027 Patent"), and U.S. Patent No. 9,074,029 (the "'029 Patent") (collectively, the "Patents-in-Suit").[1]

---

[1] Plaintiff has asserted Claims 1, 2, 3, 4, 8, and 9 of the '412 Patent, Claims 1, 8, 10, 11, 16, and 17 of the '719 patent, Claims 1 and 5 of the '027 Patent, and Claims 1, 2, 3, 7, 8, 11, 16, and 17 of the '029 Patent. [*See* Plaintiff's Fourth Amended Initial Claim Chart, served June 17, 2016.] To the extent Plaintiff asserts additional claims of the Patents-in-Suit, clarifies its infringement position with respect to the presently asserted claims, or asserts additional patents, RB reserves its right to amend these contentions to address those additional claims, infringement positions, and/or patents as appropriate.

13198355

| Prior Art Product | Sold By | Date Available |
|---|---|---|
| Esteem Gloves | Cardinal Healthcare/Allegiance Corporation | At least by 2005 |
| DUREX Avanti Bare Condoms | Reckitt Benckiser, LLC | At least by 2011<br><br>(to the extent the asserted claims are found to cover the accused products, this product is invalidating prior art with respect to at least the '027 and '029 Patents) |
| LifeStyles® SKYN® Condoms | Ansell Healthcare Products LLC | At least by 2008<br><br>(invalidating prior art with respect to at least the '027 and '029 Patents) |

## III. INVALIDITY CONTENTIONS: INVALIDITY PURSUANT TO 35 U.S.C. § 102

Subject to the reservation of rights set forth above, RB provides the claim charts and related micrographs annexed hereto as Appendices A-F, which set forth its contentions that each limitation of each asserted claim of the Patents-in-Suit is invalid as anticipated by the identified prior art references including products.

## IV. INVALIDITY CONTENTIONS: INVALIDITY PURSUANT TO 35 U.S.C. § 103

To the extent a finder of fact finds that a limitation of a given claim was not disclosed by one of the references identified in Section III and accompanying Appendices A-F, the references render the asserted claims obvious either alone or in combination with one or more of the other references identified in Section II.  The asserted claims contain nothing that goes beyond ordinary innovation, and to the extent not anticipated, no asserted claim goes beyond combining known elements to achieve predictable results, or does more than choose between clear alternatives already known to those of ordinary skill in the art.

13198355

**THIRD AMENDED APPENDIX A**
**Anticipation By U.S. Patent Publication No. 2004/0169317 ("Wang")**

A.   U.S. Patent No. 8,087,412 (the "'412 Patent")

| Asserted Claim | '412 Patent Claim Language/Elements | Wang (U.S. Patent Publication No. 2004/0169317) |
|---|---|---|
| 1 | A synthetic polyisoprene elastomeric article comprising: | Wang Abstract, paragraphs [0003], [0005], [0006], [0008], [0010], [0013]-[0015], [0026], [0068], [0073]. |
| | synthetic polyisoprene particles that are pre-vulcanized and | To the extent this claim limitation can be understood and is not indefinite, Wang Abstract, paragraphs [0003], [0011]-[0014], [0030], [0036], [0040], [0053], [0062], [0072]. |
| | cured; | Wang paragraphs [0014], [0028], [0040], [0044], [0047], [0048], [0059], [0063], [0064]. |
| | said synthetic polyisoprene particles bonded to each other through intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks; | To the extent this claim limitation can be understood and is not indefinite, Wang paragraphs [0003], [0004], [0009], [0026], [0040]. |
| | wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniform in said synthetic polyisoprene latex article. | To the extent this claim limitation can be understood and is not indefinite, it would be inherent in Wang because the process and formulation disclosed in Wang is within the scope of the process and formulation disclosed and claimed in the asserted patents such that the inventors of the asserted patents merely attempted to claim what they regard to have been a previously unappreciated property of the prior art. Thus, this limitation necessarily flows from the teachings of Wang, and RB expects that a TEM micrograph of an osmium treated sample of an article made in accordance with the process, formulation and teaching of Wang (which is within the scope of the process, formulation and teaching disclosed in the asserted patents) would show uniformity of the crosslinks within the meaning of the claim. |

1319897v1

| | Asserted Claim | '719 Patent Claim Language/Elements | Wang (U.S. Patent Publication No. 2004/0169317) |
|---|---|---|---|
| 1 | | A synthetic polyisoprene elastomeric glove or condom comprising: | Wang Abstract, paragraphs [0003], [0005]-[0010], [0013]-[0015], [0026], [0029], [0045]-[0061], [0064], [0068], [0073]. |
| | | synthetic polyisoprene particles that are pre-vulcanized and | To the extent this claim limitation can be understood and is not indefinite, Wang Abstract, paragraphs [0003], [0011]-[0014], [0030], [0036], [0040], [0053], [0062], [0072]. |
| | | cured; | Wang paragraphs [0014], [0028], [0040], [0044], [0047], [0048], [0059], [0063], [0064]. |
| | | said synthetic polyisoprene particles bonded to each other through intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks; | To the extent this claim limitation can be understood and is not indefinite, Wang paragraphs [0003], [0004], [0009], [0026], [0040]. |
| | | wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniform in said synthetic polyisoprene elastomeric glove or condom, | To the extent this claim limitation can be understood and is not indefinite, it would be inherent in Wang because the process and formulation disclosed in Wang is within the scope of the process and formulation disclosed and claimed in the asserted patents such that the inventors of the asserted patents merely attempted to claim what they regard to have been a previously unappreciated property of the prior art. Thus, this limitation necessarily flows from the teachings of Wang, and RB expects that a SEM micrograph of a glove or condom |
| | | wherein such uniformity is measured by one or more of the following | |
| | | (a) the glove or condom exhibits a substantially conchoidal fracture when fractured at liquid nitrogen temperature, or | made in accordance with the process, formulation and teaching of Wang (which is within the scope of the process, formulation and teaching disclosed in the asserted patents) when fractured at liquid nitrogen temperature would show conchoidal fractures within the meaning of the claim and/or RB expects that a SEM micrograph of a |
| | | (b) the glove or condom exhibits a fracture surface with an absence of scanning electron microscope-viewable intra-polyisoprene particle and inter-polyisoprene particle features when ruptured at room temperature. | fracture surface of glove or condom made in accordance with the process, formulation and teaching of Wang when ruptured at room temperature would show an absence of intra-polyisoprene particle and inter-polyisoprene particle features within the meaning of the claim. See Appendix C. |

13198707.1

4

| Asserted Claim | '719 Patent Claim Language/Elements | Wang (U.S. Patent Publication No. 2004/0169317) |
|---|---|---|
| 17 | The glove or condom of claim 1, wherein the glove or condom exhibits uniform intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks when fractured is such that a fracture surface passes through both inter-particle regions and intra-particle regions nonpreferentially. | To the extent this claim limitation can be understood and is not indefinite, it would be inherent in Wang because the process and formulation disclosed and claimed in Wang is within the scope of the process and formulation disclosed and claimed in the asserted patents such that the inventors of the asserted patents merely attempted to claim what they regard to have been a previously unappreciated property of the prior art. Thus, this limitation necessarily flows from the teachings of Wang, and RB expects that a SEM micrograph of a glove of condom made in accordance with the process, formulation and teaching of Wang (which is within the scope of the asserted patents), when fractured, would show a fracture surface that passes through both inter-particle regions and intra-particle regions nonpreferentially within the meaning of the claim. *See* Appendix C. |

## C. U.S. Patent No. 9,074,027 (the "'027 Patent")

| Asserted Claim | '027 Patent Claim Language/Elements | Wang (U.S. Patent Publication No. 2004/0169317) |
|---|---|---|
| 1 | A synthetic, dip-formed polyisoprene elastomeric condom comprising: | Wang Abstract, paragraphs [0003], [0005]-[0010], [0013]-[0015], [0026], [0029], [0045]-[0061], [0064], [0068], [0073]. |
| | synthetic polyisoprene particles, | Wang Abstract, paragraphs [0003], [0011]-[0014], [0030], [0036], [0040], [0053], [0062], [0072]. |
| | said synthetic polyisoprene particles bonded to each other through intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks; | To the extent this claim limitation can be understood and is not indefinite, Wang paragraphs [0003], [0004], [0009], [0026], [0040]. |
| | wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are such that the molecular weight is less than about 8000 g/mol between the | To the extent this claim limitation can be understood and is not indefinite, it would be inherent in Wang because the process and formulation disclosed in Wang is within the scope of the process and formulation disclosed and claimed in the asserted patents such that the |

7

13198707.1

**THIRD AMENDED APPENDIX B**
**Anticipation By U.K. Patent Application No. GB 2,436,566A ("Attrill")**

A.    U.S. Patent No. 8,087,412 (the "'412 Patent")

| Asserted Claim | '412 Patent Claim Language/Elements | Attrill |
|---|---|---|
| 1 | A synthetic polyisoprene elastomeric article comprising: | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, Attrill, Abstract, p.1, ll. 3-5, 14-22; p. 4, ll. 29-30; p. 5, ll. 1-13; p. 6, ll. 9-21; p. 8, ll. 5-23; p. 10, ll. 1-4, p. 11, ll. 3-7, 9-12; p. 14, ll. 8-13. |
| | synthetic polyisoprene particles that are pre-vulcanized and | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, Attrill, p. 2, ll. 2-4, 10-12; p.3, ll. 18-20; p.4, ll. 5-10; p. 5, ll. 7-12; p. 10, ll. 9-12; pp. 17-19 (Ex. 1-3). |
| | cured; | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, Attrill, p. 2, ll. 2-4, 10-12; p.3, ll. 18-20; p.4, ll. 5-10; p. 5, ll. 7-12; p. 10, ll. 9-12; p. 14, table 2, ll. 5-7; pp. 17-19 (Ex. 1-3). |
| | said synthetic polyisoprene particles bonded to each other through intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks; | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, Attrill, p. 2, ll. 7-9, 12-15; p. 6, ll. 22-29; p. 8, ll. 1-4; p. 11, ll. 24-30. |
| | wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniform in said | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, it would be inherent in Attrill because the process and formulation disclosed in Attrill is within the |

1

J3198702.1

| Asserted Claim | '719 Patent Claim Language/Elements | Attrill |
|---|---|---|
| 1 | A synthetic polyisoprene elastomeric glove or condom comprising: | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, Attrill, Abstract, p.1, ll. 3-5, 14-22; p. 4, ll. 29-30; p. 5, ll. 1-13, ll. 25-29; p. 6, ll. 9-21; p. 8, ll. 5-23; p. 9, ll. 10-14; p. 10, ll. 1-4, p. 11, ll. 3-7, 9-12; p. 14, ll. 8-13. |
| | synthetic polyisoprene particles that are pre-vulcanized and | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, Attrill, p. 2, ll. 2-4, 10-12; p.3, ll. 18-20; p.4, ll. 5-10; p. 5, ll. 7-12; p. 10, ll. 9-12; pp. 17-19 (Ex. 1-3). |
| | cured; | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, Attrill, p. 2, ll. 2-4, 10-12; p.3, ll. 18-20; p.4, ll. 5-10; p. 5, ll. 7-12; p. 10, ll. 9-12; p. 13, ll. 9-12; p. 14, table 2, ll. 5-7; pp. 17-19 (Ex. 1-3). |
| | said synthetic polyisoprene particles bonded to each other through intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks; | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, Attrill, p. 2, ll. 7-9, 12-15; p. 6, ll. 22-29; p. 8, ll. 1-4; p. 11, ll. 24-30. |
| | wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniform in said synthetic polyisoprene elastomeric glove or condom, | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, it would be inherent in Attrill because the process and formulation disclosed in Attrill is within the scope of the process and formulation disclosed and claimed in the asserted patents such that the inventors of the asserted patents merely attempted to claim what they regard to have been a previously unappreciated property of the prior art. Thus, this limitation |
| | wherein such uniformity is measured by one or more of the following (a) the glove or condom exhibits a substantially conchoidal fracture when fractured at liquid nitrogen temperature, or | necessarily flows from the teachings of Attrill, and RB expects that a SEM micrograph of a glove or condom made in accordance with the process, formulation and teaching of Attrill (which is within the scope |

13198702.1

13198702.1

| Asserted Claim | '027 Patent Claim Language/Elements | Attrill |
|---|---|---|
| | said synthetic polyisoprene particles bonded to each other through intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks; | can be understood and is not indefinite, Attrill, p. 2, ll. 2–4, 10–12; p.3, ll. 18–20; p.4, ll. 5–10; p. 5, ll. 7–12; p. 10, ll. 9–12; pp. 17–19 (Ex. 1-3).<br><br>To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, Attrill, p. 2, ll. 7–9, 12–15; p. 6, ll. 22–29; p. 8, ll. 1-4; p. 11, ll. 24–30. |
| | wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are such that the molecular weight is less than about 8000 g/mol between the crosslinks. | To the extent this claim is construed by the Court to be broad enough to cover the accused products, and to the extent this claim limitation can be understood and is not indefinite, it would be inherent in Attrill because the process and formulation disclosed in Attrill is within the scope of the process and formulation disclosed and claimed in the asserted patents such that the inventors of the asserted patents merely attempted to claim what they regard to have been a previously unappreciated property of the prior art. Thus, this limitation necessarily flows from the teachings of Attrill, and, when measured using the method described in the asserted patents, the molecular weight between the crosslinks in a condom made in accordance with the process, formulation and teaching of Attrill (which is within the scope of the process, formulation and teaching disclosed in the asserted patents) IS less than about 8000 g/mol within the meaning of the claim. Moreover, RB has sold commercially viable condoms made in accordance with the teachings in Attrill such that the assertions made by Ansell through its attorney/agent on p. 1, first paragraph in ANS0003185-86 are further evidence of inherency. |

10

13198739.1

**THIRD AMENDED APPENDIX F**
**Anticipation By Products**

A. U.S. Patent No. 8,087,412 (the "'412 Patent")

| Asserted Claim | '412 Patent Claim Language/Elements | Products |
|---|---|---|
| 1 | A synthetic polyisoprene elastomeric article comprising: synthetic polyisoprene particles that are pre-vulcanized and cured; said synthetic polyisoprene particles bonded to each other through intra-polyisoprene particle crosslinks and inter-polyisoprene particle crosslinks; wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are substantially uniform in said synthetic polyisoprene latex article. | To the extent this claim limitation can be understood and is not indefinite, the Allegiance/Cardinal Esteem Glove is a commercial embodiment of Wang (see Appendices A and C). |
| 2 | The synthetic polyisoprene elastomeric article of claim 1, wherein said latex article is a condom or a glove. | To the extent this claim limitation can be understood and is not indefinite, the Allegiance/Cardinal Esteem Glove is a commercial embodiment of Wang (see Appendices A and C). |
| 3 | The synthetic polyisoprene elastomeric article of claim 1, wherein said latex article exhibits a substantially conchoidal fracture when fractured at liquid nitrogen temperature. | To the extent this claim limitation can be understood and is not indefinite, the Allegiance/Cardinal Esteem Glove is a commercial embodiment of Wang (see Appendices A and C). |

1

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, hereby certify that on March 20, 2017, I caused a true and correct copy of the foregoing document to be served on the following counsel of record in the manner indicated:

### BY E-MAIL

Colm F. Connolly, Esquire
David W. Marston Jr., Esquire
Jody C. Barillare, Esquire
Morgan, Lewis & Bockius LLP
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, DE 19801
*cconnolly@morganlewis.com*
*dmarston@morganlewis.com*
*jbarillare@morganlewis.com*

Thomas B. Kenworthy, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
*tkenworthy@morganlewis.com*

Raymond R. Moser, Jr., Esquire
Moser Taboada
1030 Broad Street
Suite 203
Shrewsbury, NJ 0702
*rmoser@mtiplaw.com*

*Attorneys for Plaintiff*

*Exhibit 9*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC, | ) ) ) |
| Plaintiff, | ) ) C.A. No. 15-915-RGA |
| v. | ) ) |
| RECKITT BENCKISER LLC, | ) ) |
| Defendant. | ) |

**DEFENDANT RECKITT BENCKISER LLC'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD SET OF INTERROGATORIES (NOS. 3-4)**

Pursuant to Rules 26 and Rule 33 of the Federal Rules of Civil Procedure, Defendant Reckitt

Benckiser LLC ("RB"), as and for its objections and responses to Plaintiff Ansell Healthcare

Products LLC's ("Plaintiff") Third Set of Interrogatories (Nos. 3-4), states as follows:

**GENERAL OBJECTIONS**

1.      RB incorporates by reference its General Objections set forth in its Objections and

Responses to Plaintiff's First Set of Interrogatories (No. 1).

**SPECIFIC RESPONSES**

Subject to the specific objections set forth below, and specifically incorporating each of the

foregoing General Objections into each Specific Response below, and without waiving said

objections and responses, RB responds as follows:

**Interrogatory No. 3:**

**Identify all facts that support RB's invalidity defenses in this case together with the names
and addresses of the people with knowledge of those facts, upon whom RB intends to rely.**

RB objects to this interrogatory on the grounds that it is exceedingly overbroad and therefore exceeds the bounds of a proper interrogatory under the Federal Rules of Civil Procedure. RB also objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege. Subject to and without waiving these objections, or the General Objections listed above, RB states that it has already produced detailed invalidity contentions in this case, which are incorporated herein by reference. In addition, and in accordance with Federal Rule of Civil Procedure 33(d), Ansell is directed to the documents produced by RB in connection with its contentions, additional documents bearing Bates numbers RB0002044 – RB0004451, and the documents and other things produced by Cardinal Health in response to the subpoena served in this case. As needed, RB will supplement its response to this interrogatory as discovery in this case proceeds.

**Interrogatory No. 4:**

**Identify all facts that support RB's noninfringement defenses in this case together with the names and addresses of the people with knowledge of those facts, upon whom RB intends to rely.**

RB objects to this interrogatory on the grounds that it is exceedingly overbroad and therefore exceeds the bounds of a proper interrogatory under the Federal Rules of Civil Procedure. RB also objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege. Subject to and without waiving these objections, or the General Objections listed above, RB lists the following facts that support is non-infringement defense:

- For the reasons set forth in RB's detailed invalidity contentions, as well as the parties' joint claim construction chart, RB's Answering Claim Construction Brief, and the Declaration of William D. Potter, Ph.D. dated December 30, 2016 (including exhibits), all of which are incorporated herein by reference, all of the asserted claims are invalid. An invalid claim cannot be infringed.

- RB is merely practicing the prior art, for example at least Claim 1 in the GB566 patent application.

- To the extent the objective boundaries of the claims can be determined, the accused products do not have pre-vulcanized particles within the meaning of the asserted claims.

- To the extent the objective boundaries of the claims can be determined, the crosslinks in the accused products are not substantially uniform within the meaning of the asserted claims.

- To the extent the objective boundaries of the claims can be determined, the accused products do not exhibit a substantially conchoidal fracture within the meaning of the claims when fractured at liquid nitrogen temperature.

- To the extent the objective boundaries of the claims can be determined, particle features are visible within the meaning of the asserted claims in a facture surface of the accused products fractured at room temperature.

- To the extent the objective boundaries of the claims can be determined, uniformity of double isoprene bonds within the meaning of the asserted claims is not exhibited in an osmium treated sample of the accused products.

- To the extent the objective boundaries of the claims can be determined, the accused products lack non-preferential fracturing within the meaning of the asserted claims.

- Unless all of the asserted claims in the '027 and '029 Patents are construed by the Court to require pre-vulcanized particles and/or substantially uniform crosslinks, they are invalid and thus cannot be infringed. As noted, and to the extent the objective boundaries of the claims can be determined, the accused products do not have pre-vulcanized particles or substantially uniform crosslinks within the meaning of the asserted claims.

- To the extent the objective boundaries of the claims can be determined, Ansell will not be able to meet its burden of proof that the accused products exhibit the molecular weight between crosslinks required by the asserted claims for at least the reason that the method disclosed in the patents to calculate the molecular weight is inherently flawed and based on a number of undisclosed assumptions that, depending on which are made, will vary the results obtained.

By way of further response, RB may rely on Dr. Richard Arnold and Dr. William Potter in connection with at least some of the facts. As needed, RB will supplement its response to this interrogatory as discovery in this case proceeds.

As to objections,

Dated: January 6, 2017

**YOUNG CONAWAY STARGATT  
& TAYLOR, LLP**

*/s/ Pilar G. Kraman* _____
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 576-3586
pkraman@ycst.com

-and-

Douglas J. Nash (admitted *pro hac vice*)
John T. Gutkoski (admitted *pro hac vice*)
Denis J. Sullivan (admitted *pro hac vice*)
Kathryn D. Cornish (admitted *pro hac vice*)
Naresh K. Kannan (admitted *pro hac vice*)
BARCLAY DAMON, LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
(315) 425-2700

*Attorneys for Defendant
Reckitt Benckiser LLC*

- 4 -

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, hereby certify that on January 6, 2017, I caused a true and correct copy of the foregoing document to be served on the following counsel of record in the manner indicated:

### BY E-MAIL

Colm F. Connolly, Esquire
David W. Marston Jr., Esquire
Jody C. Barillare, Esquire
Morgan, Lewis & Bockius LLP
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, DE 19801
*cconnolly@morganlewis.com*
*dmarston@morganlewis.com*
*jbarillare@morganlewis.com*

Thomas B. Kenworthy, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
*tkenworthy@morganlewis.com*

Raymond R. Moser, Jr., Esquire
Moser Taboada
1030 Broad Street
Suite 203
Shrewsbury, NJ 0702
*rmoser@mtiplaw.com*

*Attorneys for Plaintiff*

Dated:   January 6, 2017

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/  Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
*pkraman@ycst.com*

*Attorneys for Defendant*

01:18254645.1