IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANSELL HEALTHCARE PRODUCTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>RECKITT BENCKISER LLC,<br><br>Defendant. | Civil Action No. 15-cv-915-RGA |

**MEMORANDUM ORDER**

At issue here is the parties' dispute regarding the disclosure of certain documents exchanged between Plaintiff and Plaintiff's damages expert, Mr. John Hansen, in connection with Mr. Hansen's review of an internal settlement proposal. (D.I. 237 at 1). Mr. Hansen is a Vice President at TM Financial. (D.I. 230-1 at 144). Plaintiff asserts that the documents are privileged under Federal Rule of Civil Procedure 26(a)(2)(B) because Mr. Hansen reviewed them in his capacity as a consulting expert, which was separate from his later work as a testifying damages expert. (*Id.*). Plaintiff further argues that Documents 2 and 3(c) are protected from disclosure even if the court finds no distinction between Mr. Hansen's testifying and consulting roles. (*Id.* at 203). Specifically, Plaintiff contends that Document 2 is a draft report of Mr. Hansen's testifying expert report, and that Document 3(c) contains opinion work product of Ansell's representatives. (*Id.*). Defendant counters that the Federal Rules compel production of the documents because there was no clear distinction between Mr. Hansen's role as a testifying

expert and a consulting expert, that Document 2 is not a draft report, and that Document 3(c) does not fall within the protection of the work product doctrine. (D.I. 247).

## A. Disclosures and Privilege Under Rule 26

The person asserting a claim of privilege bears the burden of establishing its application. *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990). Rule 26(a)(2)(B) requires that a testifying expert witness provide a written report containing, among other things, "a complete statement of all opinions the witness will express" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Though Rule 26(a)(2)(B)'s required disclosures for testifying experts are broad, Rules 26(b)(3)(A), 26(b)(3)(B), and 26(b)(4) limit the scope of discovery with respect to testifying experts.

Rule 26(b)(4) protects all forms of communication between a party's attorney and experts required to provide written reports under Rule 26(a)(2)(B), with three exceptions. Under Rule 26(b)(4)(C), communications that (1) relate to an expert's compensation, (2) identify facts or data provided by the party's attorney that the expert considered in forming expressed opinions, or (3) identify assumptions provided to the expert by the party's attorney and that the expert relied on are not protected from disclosure. Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii).

The scope of discoverable material under Rule 26(b)(4)(C)(ii) has varied over time. Prior to 1993, Rule 26(b)(4) permitted discovery of material only actually known and relied upon by a testifying expert. *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 462 (E.D. Pa. 2005) (discussing history of the scope of expert discovery under Rule 26). From 1993, when the requirement for testifying expert reports was initially adopted, until 2010, the required disclosures included "data and other information considered by the expert." *See* Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendments (discussing the history of this provision).

2

The Advisory Committee notes to the 1993 amendments describe the effect of the broadened disclosures:

> Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendments. The scope of information "considered" covered "any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected." *Synthes Spine*, 232 F.R.D. at 463. The policy underlying the expanded scope of expert discovery was to ensure, "sufficiently in advance of trial[,] that opposing parties have a reasonable opportunity to prepare for effective cross examination" of each other's experts. Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendments.

The 2010 amendments to Rule 26(a)(2) narrowed the scope of required disclosures in testifying expert reports from "the data and other information considered by the witness" to "the facts or data considered by the witness." Fed. R. Civ. P. 26(a)(2). The Advisory Committee notes to the 2010 amendments of Rule 26 indicate that the amendments are "intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports." Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendments. More specifically,

> [t]he refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

3

*Id.* As other courts have recognized, "[i]t was the disclosure of attorney-expert communications, including *attorney* work product, that the Advisory Committee was attempting to arrest[,]" "not theories or mental impressions of *experts*." *Yeda Res. & Dev. Co., Ltd. v. Abbot GmbH & Co. KG*, 292 F.R.D. 97, 112 (D.D.C. 2013).

### B. Mr. Hansen's Dual Roles

Consulting expert discovery is much more limited than testifying expert discovery—materials considered by a consulting expert are generally not discoverable. *Employees Committed for J. v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008) ("When an expert is retained as a litigation consultant, however, materials reviewed or generated by the expert are generally privileged and immune from disclosure."); *Bro-Tech Corp. v. Thermax, Inc.*, 2008 WL 724627 at *2 (E.D. Pa. March 17, 2008) ("Information exclusively considered by such an expert in his or her capacity as a consulting expert does not fall under Rule 26(a)(2)(B)."). The "dual hat" expert initially hired as a consulting expert and subsequently retained as a testifying expert in the same case thus presents issues regarding the appropriate scope of discovery.

In cases involving a "dual hat" expert, privilege applies "only [to] those materials generated or considered uniquely in the expert's role as consultant." *S.E.C. v. Reyes*, 2007 WL 963400 at *1 (N.D. Cal. Mar. 30, 2007). The party resisting disclosure of the documents must demonstrate that "the information considered for consulting expert purposes was not also considered pursuant to the expert's testifying function." *Bro-Tech*, 2008 WL 724627 at *2; *In re Air Crash at Dubrovnik, Croatia on April 3, 1996*, 2001 WL 777433 at *4 ("the party seeking to compel the production of documents should not have to rely on the resisting party's representation that the documents were not considered by the expert in forming his opinion.").

4

In other words, "a clear distinction must be made between documents the expert considered in his role as a consultant and those he considered in his role as a testifying expert." *Oklahoma v. Tyson Foods*, 2009 WL 1578937 at *5. "[I]f the subject matter of the materials sought to be protected relates to the facts and opinions the expert expresses in his report, a court should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion." *Robocast v. Apple, Inc.*, 2013 WL 12155813 at *3 (D. Del. Sept. 18, 2013); *Yeda*, 292 F.R.D. at 108; *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of N.Y., Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997) ("any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery."). When "the subject matter [in the material at issue] directly relates to an opinion in the expert's report, there will be an ambiguity." *See, e.g., Robocast*, 2013 WL 12155813 at *3; *Yeda*, 292 F.R.D. at 109; *Reyes*, 2007 WL 963400 at *2; *Air Crash*, 2001 WL 777433 at *3.

Here, Plaintiff has taken the position that Mr. Hansen's consulting role, involving worldwide settlement analysis, was a "separate engagement[]" that "does not relate directly to [his United States-focused damages analysis] as a testifying expert." (D.I. 237 at 1-2). Plaintiff also argues that there is a clear distinction between Mr. Hansen's consulting and testifying roles because the information he considered in his consulting capacity, which was broader in geographic scope and included information on additional products, extends beyond the information he considered in his testifying capacity. (*Id.* at 1, 3).

I find that Plaintiff has failed to establish a "clear distinction" between Mr. Hansen's role as a consulting expert and his role as a testifying expert. Plaintiff's assertion that Mr. Hansen's consulting and testifying roles are separate engagements is belied by the fact that Plaintiffs have presented only one engagement agreement for Mr. Hansen. (D.I. 236, Ex. A; D.I. 247 at 2). The

5

argument that the differing scope of information Mr. Hansen considered in his two roles clearly distinguishes those roles is similarly unavailing. The products and patents at issue in this case were included in the calculations Mr. Hansen performed or provided feedback on in his consulting role. Additionally, there is considerable overlap in the facts and data generally relevant to settlement analysis and damages analysis. Analyses related to settlement and damages generally include computation of a reasonable royalty using data such as the parties' market shares, sales revenues, and licensing history, among other things. Mr. Hansen considered all of these sorts of data in his testifying expert report, and the documents at issue also contain this information and additional economic information relevant to settlement and damages analyses, such as profit margins. That Mr. Hansen considered information in his consulting role beyond that which he considered in his testifying role does not establish a clear distinction. Since the information considered by Mr. Hansen for his consulting role included United States sales data and other information relevant to the current case, it is difficult, if not impossible, to believe that it did not inform the opinions in his testifying expert report concerning damages. Accordingly, Plaintiff must produce the documents it exchanged with Mr. Hansen in his consulting role.

## C. Draft Expert Report

Rule 26(b)(4)(B) protects from discovery "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Fed. R. Civ. P. 26(b)(4)(B).

Plaintiff argues that if I rule that there is no clear distinction between Mr. Hansen's testifying and consulting roles, Document 2 is protected from disclosure as a draft expert report under Rule 26(a)(2)(B)(ii). (D.I. 246 at 2-3). Beyond this broad assertion, however, Plaintiff has

6

failed to provide any explanation relating Document 2 to Mr. Hansen's testifying expert report. (*See* D.I. 246). Nothing in Document 2 suggests that it is a draft for anything else. The word "draft" does not appear on the pages and there is no indication that the document is under revision. Further, Plaintiff did not provide any communications regarding Document 2 that refer to Document 2 as a draft for Mr. Hansen's testifying expert report. Nor did Mr. Hansen testify that Document 2 was a draft of his testifying expert report. He testified that he "provide[d] some written feedback" on a worldwide settlement proposal provided to him by counsel, with no mention that said "written feedback" bore any relation to his testifying expert report. (D.I. 236 at Ex. A, Hansen Dep. 14:2-16:5). Document 2 thus appears to be a final presentation given to Plaintiff by TM Financial.

Even if Document 2 could be fairly characterized as a draft, Plaintiff cannot credibly argue that Document 2 is a draft of Mr. Hansen's testifying expert report. Plaintiff's draft report argument is belied by Plaintiff's assertions that Mr. Hansen's testifying and consulting roles are clearly distinct due to differences in the scope of information involved in each role. Plaintiff described Document 2 as concerning "a settlement position for Ansell with respect to a lump sum paid-up worldwide license for RB as to Ansell's polyisoprene article patents." (D.I. 246 at 1). During Mr. Hansen's deposition, counsel repeatedly distinguished Mr. Hansen's work concerning Document 2 from Mr. Hansen's testifying expert role. (D.I. 236, Ex. B, Hansen Dep. at 16:2-5, 19:2-7, 19:24-20:12; *see also id.* at 16:14-17 ("[T]hat is a separate matter done for purposes of settlement. He was, at the time, a non-testifying expert consultant to counsel.")). Further, Plaintiff acknowledges that the litigation for which Mr. Hansen was hired as a testifying expert concerns only United States sales of a narrower set of products than those at issue in Mr. Hansen's consulting role. (D.I. 237 at 3). Plaintiff has continually argued to distinguish Mr.

7

Hansen's consulting worldwide settlement analysis on the basis that it encompassed more products and a larger geographic area than his testifying expert analysis. Considering this and the lack of evidence that Document 2 is a draft for some other final product, I conclude that Plaintiff's arguments that the worldwide analysis is a draft for his testifying expert analysis are meritless. Document 2 is not a draft of Mr. Hansen's testifying expert report.

### D. Opinion Work Product

The work product doctrine, as codified in Fed. R. Civ. P. 26(b)(3), provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," unless the party seeking discovery has (1) "substantial need for the materials" and (2) "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). The party asserting protection under the work product doctrine "has the burden of demonstrating that the disputed documents were prepared by or for the party or its attorney and prepared in anticipation of litigation or for trial." *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001). In order "to satisfy that burden, the party must establish that the material . . . [was] prepared in anticipation of litigation for that party." *Id.*

Rule 26(a)(2)(B)'s mandated disclosures regarding testifying experts are limited by Rule 26(b)(4). *United States v. Veolia Environnement North America Operations, Inc.*, 2014 WL 5511398 at *3 (D. Del. Oct. 31, 2014). The Third Circuit has held, in cases predating the 2010 amendments to Rule 26, that the protections in Rule 26(b)(3) also cabin the scope of Rule 26(b)(4) by preventing disclosure of core attorney work product that is provided to a testifying expert. In *Bogosian v. Gulf Oil Corp.*, the Third Circuit reversed the district court and held that Rule 26(b)(4) did not compel the production of attorney-prepared documents "containing solely

8

[the attorneys'] mental impressions and thought processes relating to the legal theories of a complex case," even though those documents had been reviewed by testifying trial experts in preparation for their depositions. 738 F.2d 587, 589-91, 593 (3d Cir. 1984). Similarly, *In re Cendant Corp. Securities Litigation* held that a non-testifying expert's work product—the substance of conversations between a non-testifying "consulting expert in trial strategy and deposition preparation" and a party's attorney—need not be disclosed. 343 F.3d 658, 660, 664-65 (3d Cir. 2003).

The holdings in these cases are consistent with the 2010 amendments to Rule 26 and cases subsequently decided by courts in the Third Circuit. The 2010 amendments were not intended to "impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions." Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendments. Courts in this circuit have noted that privilege cannot be used both as a sword and a shield. *CP Kelco U.S., Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("It would be manifestly unfair to allow a party to use the [attorney-client] privilege to shield information which it had deliberately chosen to use offensively, as [Defendant] did in this instance when it used the allegedly privileged documents to arm its expert for testimony."). In *Fialkowski v. Perry*, the court compelled production of documents prepared by a party to aid its attorney's understanding of accounting records, because the party's testifying expert had reviewed them and they contained facts relevant to the expert's opinions. 2012 WL 2527020 at *1-2, *5 (E.D. Pa. June 29, 2012). After discussing the 2010 amendments to Rule 26, the *Fialkowski* court reasoned, "The requested materials contain 'factual ingredients' and disclosure does not implicate 'theories or mental impressions of counsel' because plaintiff, not plaintiff's attorney, prepared them." *Id.* at *4. The disclosures at issue in *Bogosian* conform to the current

9

rule, as they were characterized as containing "solely the [the attorneys'] mental impressions and thought processes," rather than underlying facts or data considered by the expert. 738 F.2d at 593. *Cendant* dealt with a consulting expert subject to different discovery rules than a testifying or dual-hat expert. 343 F.3d at 559.

Here, Plaintiff acknowledges that Document 3(c) was provided to Mr. Hansen for purposes of his work in his consulting capacity. (D.I. 241 at 17:13-16; D.I. 246 at 1). Document 3(c) contains sales figures and other facts and data that would be relevant to Mr. Hansen's damages analysis, regardless of whether he actually relied on them. Since Plaintiff waived privilege by designating Mr. Hansen as a testifying expert, Rule 26(b)(4)(ii) compels Plaintiff to produce documents that Mr. Hansen considered if they contain facts or data relevant to his damages analysis. Document 3(c) contains relevant facts, and therefore must be produced, unless it contains the theories or mental impressions of counsel. Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendments.

Plaintiff contends that because Document 3(c) "contains the opinion work product of Ansell representatives," it is protected from disclosure by virtue of the 2010 amendments to Rule 26 that narrowed the scope of disclosure of information provided to expert witnesses. (D.I. 246 at 3, 4). Even if Plaintiff had not waived privilege by designating Mr. Hansen as a "dual hat" expert, Plaintiff's argument amounts to no more than an unsupported assertion. Although Document 3(c) includes estimated costs and probability of success in pursuing litigation against Defendant, the document does not identify any legal theories or other reasons supporting the probability of success. Rather, Document 3(c) summarizes the results of an economic model for Plaintiff's litigations against Defendant domestically and abroad. Further, Document 3(c) does not identify an author, nor has Plaintiff identified an author. (*See* D.I. 246). The only evidence

10

supporting Plaintiff's assertion that Document 3(c) was authored by counsel for Plaintiff is that the document contains estimates of litigation costs and outcomes. Though this confirms that the document was authored in anticipation of litigation as required for protection under the work product doctrine, it is insufficient to demonstrate that Document 3(c) was authored by an attorney. Document 3(c) was likely authored by a non-lawyer with experience in economics. Plaintiff has therefore failed to demonstrate that the 2010 amendments to Rule 26 protect Document 3(c) as counsel's work product. *See* Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendments; *Fialkowski*, 2012 WL 2527020 at *4.

Plaintiff also appears to contend that Document 2 is protected under the work product doctrine. (D.I. 246 at 3) ("If there is no clear distinction between Mr. Hansen's two roles in this matter, then Document (2) represents early mental impressions, legal theories, and trial strategy of Ansell's attorneys, representatives, and consultants. It is protected from discovery under the Federal Rules."). I am not persuaded by Plaintiff's assertion. Document 2 lists TM Financial Forensics on its first page as the apparent author, and Plaintiff has not identified an alternate author with any specificity. Plaintiff's own description of Document 2 identifies it as "TM Financial Forensics' Royalty Analysis," suggesting that TM Financial, not Plaintiff's attorneys, authored the document. The contents of Document 2 contain facts relevant to Mr. Hansen's damages analysis. As with Document 3(c), there is no evidence that Document 2 was authored by an attorney, so the 2010 amendments to Rule 26 do not provide a basis for prohibiting disclosure. *See* Fed. R. Civ. P. 26 advisory committee's notes to 2010 amendments; *Fialkowski*, 2012 WL 2527020 at *4.

Since Plaintiff and Mr. Hansen exchanged Documents 2 and 3(c), the documents contain facts relevant to Mr. Hansen's damages analysis, and Plaintiff has not provided adequate

11

evidence that either document was authored by an attorney, the documents are not opinion work product under the 2010 amendments to Rule 26. Plaintiff must produce Document 2 and Document 3(c).

### E. Conclusion

Plaintiff is ordered to produce the information and documents identified in D.I. 246 within five (5) days from the date of this Order.

IT IS SO ORDERED.

Entered this 11 day of December, 2017.

Richard G. Andrews
United States District Judge